Defendant-appellant, Kevin J. Coughen, appeals a criminal conviction obtained in the Columbiana County Common Pleas Court. Following a jury trial, appellant was found guilty of carrying a concealed weapon in violation of R.C. 2923.12(A).
On April 24, 1996, the Wellsville Police were summoned to a fight involving guns on Tenth Street. Officers Wilson and Eisenhart responded to the call. While investigating the call, appellant, along with others, arrived at the scene. Officer Eisenhart patted down appellant and felt a hard object on his left side underneath his jacket. Officer Eisenhart asked appellant if he had a gun and appellant responded affirmatively. Officer Eisenhart then opened appellant's jacket and removed a gun seated in a shoulder holster. Appellant was arrested and charged with carrying a concealed weapon in violation of R.C. 2923.12(A).
Appellant was arraigned in county court on April 26, 1996. The county court judge held a preliminary hearing on May 1, 1996. At the conclusion of the hearing, the judge found that there was probable cause to support the charge and ordered that the case be bound over to the grand jury.
Subsequently, the case was presented to the grand jury and it returned an indictment. Due to appellant's indigency, the court appointed counsel to represent appellant. Differences arose between appellant and his first appointed counsel prompting the court to appoint other counsel. Appellant's second appointed counsel asked to withdraw due to a conflict of interest. When the court appointed appellant his third counsel appellant simultaneously requested to represent himself. The court ordered appellant to undergo a competency evaluation. Appellant was found competent and the court allowed him to proceedpro se with his third appointed counsel acting as advisor.
The case proceeded to trial on March 3, 1997. The jury found appellant guilty as charged. This appeal followed.
In his first assignment of error, appellant alleges that:
 "APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT THE STATE FAILED TO PROVE THE ELEMENT THAT THE WEAPON BELONGING TO APPELLANT WAS CONCEALED."
When faced with a manifest weight of the evidence argument, an appellate court may not reverse a judgment arising from a jury verdict absent the unanimous concurrence of all three appellate judges. State v. Thompkins (1997), 78 Ohio St.3d 380,389. Thompkins elaborated on the concept of weight of the evidence stating:
 "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis sic.) [Black's Law Dictionary (6 Ed. 1990) 1594.]
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth' juror and disagrees with the factfinder's resolution of the conflicting testimony. [Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.E.2d 652, 661.] See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." Id. at 387.
R.C. 2923.12(A) reads:
 "No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance."
Essentially, appellant argues that the state failed to establish all of the elements for a conviction of R.C.2923.12(A). More specifically, appellant asserts that the state failed to prove that the weapon taken from him wasconcealed. To support this proposition, appellant's argument takes two different approaches.
First, appellant directs the court's attention to the testimony of Officer Eisenhart. Appellant asserts that since Officer Eisenhart was the one who located the gun, she was in the best position to testify as to whether the gun was concealed. Appellant maintains that Officer Eisenhart's testimony did not bear this out.
Second, appellant argues that he did not have the requisite intent to conceal the gun. Appellant cites to State v. Workman
(1992), 84 Ohio App.3d 534. Workman involved a defendant who brandished a knife after being chased and confronted by police officers. In determining whether the defendant intended the knife to serve as a weapon the court opined that "[a] defendant's state of mind must be inferred from the totality of the circumstances surrounding the alleged crime." Id. at 536. The circumstances which appellant relies on as proof of lack of intent was his admission to the officers that he had a gun and his pointing to it.
At trial, officer Wilson, one of the responding officers, testified:
 "A. Well, at that time, the other subjects come out, this Kevin Coughen here, and he was walking up and the other officers asked him if he had a gun, and he never answered either. About that time we told him to stop and patted him down.
"Q. And did you find anything upon that pat down?
"A. Yes.
"Q. What did you find?
 "A. He had a 9 millimeter underneath his jacket. Handgun.
 "Q. How was that 9 millimeter held under his jacket, if you recall?
"A. In a shoulder holster.
 "Q. Could you see this gun when the Defendant approached you?
"A. No, sir.
"Q. How close were you to him?
"A. A couple, two or three feet.
 "Q. Were you close enough, do you think, Officer Wilson, that had it not been concealed you would have seen the gun?
"A. Oh, yes. No doubt.
 "Q. Was that gun removed from the Defendant, Officer Wilson?
"A. Yes.
"Q. Who did that?
"A. Officer Eisenhart." (Tr. 7-8)
Officer Eisenhart testified:
"Q. What did you find when you arrived?
 "A. Uh, Patrolman Wilson got there before I did, and he was walking towards one of the trailers. When I was approaching there was two men coming from the trailer that Donna Kasa lived in. And they were walking towards us. There was a car there on the street.
"Q. What did you do?
"A. What did he we do?
"Q. What did you do?
 "A. Christina Bailey kept yelling, 'They have guns. They have guns.' And so, uh, Kevin, I believe the last name is pronounced Coughen, he was right beside me, and I said, 'Do you have a gun?'
 "Q. At this point you didn't know whether or not anybody had a gun; correct?
 "A. Right. And when I went to pat him down I felt something hard on the left side. I said, 'Do you have a gun?' And he went, (witness indicating), like that.
"Q. Indicating to you that he did?
 "A. Yeah, shook his head. So, I ripped the coat open and I took the gun out. He had it in a holster, like a shoulder holster.
"* * *
 "Q. What did you do once you had felt the weapon on Mr. Coughen?
 "A. I yelled for Patrolman Wilson. I said, "He has a gun." He had like a blue jacket on. I got in the coat, it was either zipped or buttoned, and I ripped it open, got the gun out, put it between my back and my gun belt. And he was cuffed.
 "Q. Okay. Prior to opening his jacket could you see the gun?
"A. No.
"Q. How close were you?
"A. Close.
"Q. To the Defendant?
"A. Real close.
 "Q. Were you close enough that if it had not been concealed you would have been able to see the gun?
"A. No, I couldn't see the gun." (Tr. 23-25)
Appellant testified:
 "Q. So, at that point as the car is parked on the sidewalk, next to the street, you pulled the gun out, put in your shoulder holster and zipped your coat up? Concealed the weapon?
"A. No, I didn't zip my coat up.
"Q. Did you stick it in the shoulder holster?
"A. Yes.
"Q. Were you wearing a coat?
 "A. I was wearing a thin jacket. The jacket back there.
 "Q. And did you — did that jacket cover your — is this the jacket here? (Mr. King indicating.)
"A. Exactly.
"Q. And did it cover the gun?
"A. Pretty much so, yes. The strap was visible.
"Q. The gun itself was not visible.
 "A. Well, it was in the holster, it was concealed in the holster any way." (Tr. 116-117)
This court has previously taken up the issue of whether a weapon is concealed. In State v. Brandle (1996), 116 Ohio App.3d 753, this court held at 757:
 "[I]t is sufficient to support a conviction of carrying a concealed weapon to prove only that ordinary observation would give no notice of its presence. This is a question of fact to be resolved by the trier of fact. There must be an evidentiary basis established by the proof upon which the jury could find that the weapon was concealed." quoting State v. Coker (1984), 15 Ohio App.3d 97, 98
In Brandle this court also held "that a weapon need not be totally hidden from observation in order to render it concealed within the meaning of the statute." Id. at 758.
The physical proximity of the officers to appellant put them in a position to make an "ordinary observation". Both officers testified that they could not see the gun. The gun was in a shoulder holster, at appellant's side, and underneath his arm, all of which was covered by a jacket. Appellant's admissions that he had a gun does not remove the fact that it was concealed. Therefore, there was an evidentiary basis upon which the jury could find that the gun was concealed. Furthermore, the greater amount of credible evidence supports the conclusion that the gun was concealed and that appellant was carrying a concealed weapon in violation of R.C. 2923.12(A).
Accordingly, appellant's first assignment of error is without merit.
In his second assignment of error, appellant alleges that:
 "THE TRIAL COURT ERRED IN ADMITTING EVIDENCE WHERE THE STATE FAILED TO ESTABLISH A PROPER CHAIN OF CUSTODY, DENYING APPELLANT A FAIR TRIAL AS GUARANTEED UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE 1 OF THE OHIO CONSTITUTION."
Appellant argues that he was denied a fair trial due to a "glaring" break in the chain of custody of the gun. In support of this proposition, appellant asserts that Officer Eisenhart handed the gun to an "unidentified officer". Additionally, when appellant was asked to identify the gun at trial, he denied that it was his.
Relative to chain of custody this court in State v. Black
(Dec. 12, 1994), Mahoning App. No. 93 C.A. 38, unreported, held:
 "1. State bears burden of establishing proper chain of custody of evidence, but it is not absolute duty.
 "2. In order to meet burden of establishing proper chain of custody of evidence, state need not negate all possibilities of substitution or tampering.
 "3. Chain of custody of evidence can be established by direct testimony or inference.
 "4. Issue of whether there exists break in chain of custody of evidence is determination left up to trier of fact.
 "5. Any break in chain of custody of evidence goes to the weight afforded evidence, not to its admissibility." quoting In re Lemons (1991), 77 Ohio App.3d 691
Additionally, the state "need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur." State v. Waterhouse (Feb. 16, 1995), Belmont App. No. 93-B-26, unreported.
Officer Wilson testified that the gun produced at trial and the gun removed from appellant were one in the same. (Tr. 10). Officer Eisenhart testified likewise. (Tr. 25-26). Both Officer Eisenhart and Lieutenant Yannie testified that since the gun had been removed from appellant it was stored in the Wellsville Police Department evidence locker. (Tr. 27, 40).
Based on the testimony adduced at trial, the state established to a reasonable certainty that the gun admitted into evidence at trial and the one removed from appellant were one in the same. The fact that Officer Eisenhart handed the gun to an "unidentified officer" who placed an evidence tag on it is inconsequential. Clearly, once the gun was removed from appellant, it was tagged and remained in the sole custody and control of the Wellsville Police Department, be it Officer Eisenhart, an "unidentified officer", or the department's evidence locker.
Accordingly, appellant's second assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs
Waite, J., concurs
APPROVED:
 ----------------------- Gene Donofrio Presiding Judge