**The STATE of Ohio, Appellee,**

**v.**

**MORGAN, Appellant.**

[Cite as *State v. Morgan* (1992), 84 Ohio App.3d 229.]

Court of Appeals of Ohio,
Richland County.

No. 92–CA–13.

Decided Dec. 14, 1992.

*James J. Mayer, Jr.,* Richland County Prosecuting Attorney, and *Charles D. Lynch,* Assistant Prosecuting Attorney, for appellee.

*Stephen Cockley,* for appellant.

MILLIGAN, Judge.

Appellant Gregory Morgan appeals a judgment of the Richland County Common Pleas Court convicting him of aggravated robbery (R.C. 2911.01[A][1]) with a specification of a prior felony conviction.

### Assignment of Error No. I

"The trial court erred prejudicially by ordering that the accused be shackled throughout trial."

### Assignment of Error No. II

"The trial court erred prejudicially by failing to grant a mistrial where the state's cooperating co-defendant witness testified that the offense in question occurred shortly after the accused got out of prison."

### Assignment of Error No. III

"The trial court erred prejudicially by allowing the state to amend the indictment against the accused by oral motion prior to trial to include the culpable mental state."

On November 20, 1991, appellant, Frank Smith, Joel Oatsvall, and Stephanie Albritton spent the evening in the B & G Bar in Shelby. They were in the bar from 6:00 p.m. to approximately 9:30 p.m. Before leaving the bar, they huddled together, talking. As they left, they said to the assistant manager, "See you later." They left in a white semi-tractor lettered "A.D.M. Trucking."

At approximately 11:15 p.m., appellant, Smith and Oatsvall entered the B & G Bar. Their faces were covered with masks made from a t-shirt. Smith held a gun to the bartender's head, forcing her to give him the money from the cash register. Oatsvall held a knife to the throat of a female patron, and ordered everyone to get on the floor. Appellant stood over the bar patrons who were lying on the floor, ordering them not to look up. Appellant was carrying a club, which he periodically smacked against his hands. After the robbery, the men fled the bar.

The assistant manager of the bar identified the robbers as the men who had been in the bar earlier. He had watched them earlier for three and one-half hours, as they behaved differently from the other patrons of the bar. Despite their masks, he was able to identify them by their physical appearances, the way they walked and moved, and by their voices. He specifically identified appellant by his height, the way he walked, his southern accent, and his large head.

The four were arrested the next day at a truck stop in Pennsylvania. They were travelling in the A.D.M. tractor-trailer rig. The Pennsylvania Police searched the cab of the truck, finding a revolver, knife, cartridges, and holster. The Safety Director of A.D.M. Trucking further searched the truck, finding two cut-out masks, a t-shirt from which the masks were made, a ski mask, and other clothing.

Following jury trial, appellant was convicted of aggravated robbery. The specification of a prior felony conviction was tried to the court; the court found the specification to be proven beyond a reasonable doubt. Appellant was accordingly sentenced to fourteen to twenty-five years' incarceration, with fourteen years actual incarceration.

### I

A criminal defendant is generally entitled to appear in court without shackles, as the presumption of innocence may be undermined when the defendant is presented in restraints. See, *e.g.*, *Zygadlo v. Wainwright* (C.A. 11, 1983),

720 F.2d 1221, certiorari denied (1984), 466 U.S. 941, 104 S.Ct. 1921, 80 L.Ed.2d 468; *Gilmore v. Armontrout* (C.A.8, 1988), 861 F.2d 1061, certiorari denied (1989), 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037; *State v. Carter* (1977), 53 Ohio App.2d 125, 7 O.O.3d 90, 372 N.E.2d 622. While shackling is an extreme measure, in some circumstances it is necessary for the safe, reasonable, and orderly progress of the trial. *Carter*, 53 Ohio App.2d at 132, 7 O.O.3d at 94, 372 N.E.2d at 627.

■ The decision as to whether to shackle the defendant lies in the sound discretion of the court, and the record should reflect the factors upon which the court exercised its discretion. *Id.*

■ The trial court cited its reasons for shackling appellant during trial:

"THE COURT: * * * Specifically, I want to discuss why we are doing the security arrangements we are. I have had information from a number of sources which are people who are familiar with this particular defendant plus comments this particular defendant made to detective Larry Faith that lead me to believe there's a significant security risk in this gentleman. And for that reason I am going to require that he be kept in leg irons during the trial. We will free his hands but make sure he's in a situation where he can't grab things to throw very easily.

"The information that concerns me * * * his statement to Larry Faith he has already spent 13 years in prison and nobody's putting him back in prison. The information he is apparently the president of some Arrion [*sic*] Brotherhood, white supremacy group in Illinois. A co-defendant is also a member and enforcer of the group. Another co-defendant says he had contact with this defendant from prison and he has extremely fast hands. He saw a situation where he reached out and grabbed another man's arm and broke it before anyone else could get to him.

" * * *

"Well, again, it's not because of the particular crime, only because of the particular crime that I am doing these things. It's because of warnings I have had from people who are in a position to know, people in prison with him, people who prosecuted him in Illinois and are familiar with him.

" * * *

"That is an additional point which I failed to mention. It's not just simply information we have heard from other people, but statements this man made himself directly to Captain Faith, said he wasn't going to be put back in prison again, and the information through a co-defendant in the Richland County Jail there was a possible escape plot in the works. * * * "

Based on the reasons stated by the court on the record, we cannot find that the court abused its discretion by forcing appellant to be tried wearing leg irons. The court did not handcuff appellant, and leg irons are less visible to the jury than handcuffs. Further, the court cautioned the jurors as to the shackling:

"THE COURT: * * * If you haven't already noticed, you may notice that the defendant is in the custody of the Sheriff of the Richland County Jail, he has leg irons on. That's not because he's guilty of this crime. It's not because he's a bad man. You may not consider that in any way in deciding this case.

"He's a resident—he's not a resident of the State of Ohio. He's been confined in jail pending this trial for that reason. And you are not to take any implication from that that he's guilty of this crime. Everybody must lay that aside. Do you understand that? You may never convict this man because he's in the Richland County Jail. You can only convict him because the State does produce evidence of each and every element of this crime that convinces you beyond a reasonable doubt. Can everybody work with the principle? Good."

See, also, *State v. Elmore* (Nov. 6, 1991), Scioto App. No. 1832, unreported, 1991 WL 238227 (no abuse of discretion in shackling defendant where defendant violated prison rules six times in two years, was placed in "super max" block at time of trial, and was considered to be assaultive and capable of dangerous conduct); *State v. Jones* (Sept. 16, 1992), Wayne App. No. 2718, unreported, 1992 WL 227957 (no abuse of discretion where defendant was proficient in martial arts and precautions were taken to reduce the visibility of restraints from the jury).

Appellant further suggests that the court should not shackle a defendant without holding an evidentiary hearing and exploring alternative security precautions. We concur with appellant that guidelines should be established to guide courts in this area, and that a defendant should be entitled to a hearing before he is required to be tried in shackles. However, this is not the law in Ohio, and it is not our role as an intermediate court to impose such procedures.

The first assignment of error is overruled.

## II

During recross-examination of Frank Smith, a state's witness, defense counsel asked when Smith first saw a certain exhibit. Smith answered, "maybe two, three weeks before Greg got out of prison."

Appellant moved for a mistrial; the motion was overruled. The court commented that the witness's answer was difficult to hear, because the witness mumbled. The court then removed the jury from the room and cautioned the witness to avoid mentioning that appellant had been in prison.

■ As the trial judge is in the best position to determine whether the situation warrants declaration of a mistrial, we must give great deference to the trial court's discretion. *State v. Simmons* (1989), 61 Ohio App.3d 514, 517, 573 N.E.2d 165, 166, citing *State v. Glover* (1988), 35 Ohio St.3d 18, 19, 517 N.E.2d 900, 902.

■ The court did not abuse its discretion in failing to grant a mistrial. The court noted that the comment was not clear, as the witness mumbled. This was one isolated comment in a three-day jury trial. The court cautioned the witness, and defense counsel rejected an opportunity for a limiting instruction to the jury, as it would serve to remind the jury of the comment.

The second assignment of error is overruled.

### III

Prior to trial, the state moved to amend the indictment to include the mental state of "recklessly." Appellant objected. Appellant withdrew his objection when the state agreed to insert the mental state of "knowingly" into the indictment.

Appellant concedes in his brief that he raises this issue only to preserve his right to further review, and that the amendment was proper under the majority opinion in *State v. O'Brien* (1987), 30 Ohio St.3d 122, 128–129, 30 OBR 436, 441, 508 N.E.2d 144, 149, which we are bound to follow.

Accordingly, the third assignment of error is overruled.

The judgment of the common pleas court is affirmed.

*Judgment affirmed.*

WILLIAM B. HOFFMAN, P.J., and SMART, J., concur.