This case is before the court on appeal from the Lucas County Court of Common Pleas, which found defendant-appellant, Ralph Baze, Jr., guilty of felonious assault, in violation of R.C.2903.11(A)(2) and retaining stolen property-license plate, in violation of R.C. 2913.51.
A jury trial was held on October 5 and 6, 1997. At trial, evidence was presented which established the following. On October 27, 1986, Toledo Police Officer Orwin Freeman was dispatched to 4125 Redondo Avenue in Toledo, Lucas County, Ohio. Freeman was looking for a gold-colored 1970's model Cadillac. He spotted the subject vehicle being driven towards him by appellant.
After appellant passed Freeman's police cruiser, Freeman began pursuing the vehicle with his lights and siren operating. A short distance later, appellant stopped in the center of the road, put the vehicle in reverse, and struck and disabled the police cruiser. Freeman was injured as a result of the collision. Appellant drove away from the scene. Later that same day, Freeman picked appellant out of a photo array.
On appeal, appellant raises the following assignments of error:
 "I. It Was Plain Error For the Trial Court to have Failed To Instruct The Jury In Accordance with United States v. Telfaire and progeny
 "II. Trial Counsel Was Ineffective In Failing to Request That The Jury Be Instructed In Accordance With United States v. Telfaire
 "III. The Trial Court Erred In Failing to Grant Appellant's Motion to Dismiss for Violation of his Constitutional Rights to a Speedy Trial
 "IV. The Conviction for Possession of a Stolen License Plate (Count Four) is Against the Manifest Weight of the Evidence and is Unsupported by Sufficient Evidence
 "V. The Trial Court Abused Its Discretion in Agreeing to Shackle Appellant During Trial Without Justifiable Cause"
Appellant's first and second assignments of error relate to trial counsel's failure to request a jury instruction addressing eyewitness identification, and the trial court's failure to, sua sponte, give such an instruction. We shall discuss appellant's second assignment of error first, because it presents a less stringent standard of review. Appellant argues that he was denied effective assistance of counsel because his trial counsel failed to request a jury instruction in accordance with United States v. Telfaire
(C.A.D.C. 1972), 469 F.2d 552.[1] Appellee responds that based upon the facts presented at trial, trial counsel did not act deficiently in failing to request a Telfaire instruction.
In Ohio, a properly licensed attorney is presumed competent and the burden is on the appellant to show counsel's ineffectiveness. State v. Lytle (1976), 48 Ohio St.2d 391; Statev. Hamblin (1988), 37 Ohio St.3d 153. The performance of trial counsel will be considered ineffective only upon a showing that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment" and that such errors prejudiced the defendant, depriving him of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687.
To establish prejudice, an appellant must demonstrate a reasonable probability that, but for trial counsel's mistakes, the result of the trial would have been different. Id.
In the instant case, appellant argues that Freeman had very little time to observe the suspect, and a Telfaire
instruction was necessary because there was no evidence that Freeman, despite the fact that he was a police officer, had received special training in eyewitness identification; there was no testimony as to the number of times he had been asked to identify a suspect or what factors he had been trained to analyze when identifying a suspect. Thus, appellant argues, the instruction may have aided in preventing the jury, based upon Freeman's status as a police officer, from inferring that his identification was more credible than the "civilian" eyewitness.
Upon review of the entire record of the proceedings below, we find that trial counsel's "failure" to question Freeman regarding whether or not he had special eyewitness identification training, neither rendered counsel's performance ineffective nor required him to request a Telfaire instruction. During cross-examination of Freeman, trial counsel questioned him regarding his opportunity to view the suspect. Trial counsel again raised the question of the credibility of Freeman's identification during closing arguments. Additionally, at the close of trial, the trial court instructed the jury on its role as the sole judge of the facts, witness credibility and weight of the evidence, and explained how to weigh the evidence and determine witness credibility. Accordingly, we are unable to find that there is a reasonable probability that but for trial counsel's failure to request a Telfaire instruction, the outcome of the trial would have been different. Appellant's second assignment of error is not well-taken.
In order to find appellant's first assignment of error well-taken, we would be required to find that but for the trial court's failure to give the Telfaire jury instruction, as appellant argues it should have, the outcome of the trial clearly would have been different. See State v. Long (1978), 53 Ohio St.2d 91,97. Based upon our finding as to appellant's second assignment of error, however, that there is no reasonable probability that but for trial counsel's failure to request theTelfaire instruction the outcome of the trial would have been different, appellant's first assignment of error is not well-taken.
In his third assignment of error, appellant argues that the trial court erred in failing to dismiss the indictment, because the warrants for appellant's arrest were not issued until four years after the indictment, in violation of his constitutional right to a speedy trial. Alternatively, appellant argues that his speedy trial rights were violated because he was not brought to trial for eight years after the state was informed of his whereabouts.
The right to a speedy trial is granted by statute and guaranteed by the Ohio and United States Constitutions. State v.O'Brien (1987), 34 Ohio St.3d 7, 9. The United States Supreme Court has held that the time period for which a defendant must be brought to trial begins running when he or she is arrested or indicted, and thereby becomes an "accused." United States v.Marion (1971), 404 U.S. 307, 321. In determining whether an accused's right to a speedy trial has been violated, a court must evaluate the following: (1) the length of the delay; (2) the state's reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant.Barker v. Wingo (1972), 407 U.S. 514, 530; State v. Triplett
(1997), 78 Ohio St.3d 566.
R.C. 2945.71(C)(2) requires that a person charged with a felony must be brought to trial within two hundred seventy days after his arrest. This time limit is subject only to the provisions in R.C. 2945.72. R.C. 2945.72 provides, in pertinent part, that the time an accused, in the case of a felony, must be brought to preliminary hearing and trial may be extended by the following:
 "(D) Any period of delay occasioned by the neglect or improper act of the accused;
"* * *
 "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance other than upon the accused's own motion; * * *."
As to what is considered an improper act of the accused, Ohio courts have held that:
 "[A]n accused who escapes the jurisdiction, thereby rendering himself inaccessible to the court, waives his right to a speedy trial. See State v. Bauer
(1980), 61 Ohio St.2d 83, 84-85. Under Bauer, a defendant 'may not be permitted to enjoy the protection of the speedy trial statutes, as to a time period prior to his failure to appear, when by his actions he has waived their benefits.' Id.
Furthermore, the Bauer court concluded that when a defendant has forfeited his appearance bond, speedy trial time is recalculated from the time of his re-arrest on the capias issued for his arrest. The court found that a mere 'tolling' of the limitation period during the defendant's absence prior to the final trial date is a 'solution unworkable and inconsistent with the efficient administration of justice.'" State v. Gibson (1992), 75 Ohio App.3d 388, 391.
In the instant case, appellant was arrested on January 24, 1988, and a property bond was posted. Bond was continued upon appointment of counsel. Appellant failed to appear at his February 29, 1988 arraignment. On that date a capias, or writ requiring appellant be taken into custody, was issued and bond was set at $15,000, no ten per cent. Appellant filed his motion to dismiss or to issue detainer on July 29, 1996. Interstate detainer was filed with the Kentucky authorities on or after September 9, 1996, and appellant was returned to Lucas County on December 29, 1996, and arrested on the capias.
Once in Lucas County, appellant was arraigned on January 6, 1997, and a trial date was set for February 5, 1997. At appellant's request the trial date was vacated on January 30, 1997. Appellant's counsel was permitted to withdraw and new counsel was appointed on March 3, 1997. Again, at appellant's request, the trial date was set for April 17, 1997. The trial date was vacated by appellant, who filed a motion to dismiss the indictment. A hearing was held on the motion on May 1, 1997. Appellant signed a waiver of time on July 21, 1997, and requested a trial date of September 8, 1997. On September 4, 1997, appellant filed a pro se motion to dismiss and the trial date was continued to October 6, 1997, with another time waiver executed.
This court finds that appellant cannot now, after violating his bond and absconding to another state, avail himself of the protection of the speedy trial statutes. Bauer and Gibson,supra; R.C. 2945.71(D). Further, once appellant was in the custody of Lucas County authorities, several continuances were granted, at his request, and appellant executed two time waivers.
Accordingly, appellant's third assignment of error is not well-taken.
In his fourth assignment or error, appellant argues that his conviction for possession of a stolen license plate, in violation of R.C. 2913.51, is against the manifest weight of the evidence and is not supported by sufficient evidence.
The Ohio Supreme Court has set forth this court's standard of review as to the sufficiency of evidence:
 "An appellate court's function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.) State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
In order to be convicted of retaining stolen property, the state must prove beyond a reasonable doubt that appellant received, retained or disposed of "property of another, knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." R.C. 2913.51(A).
In the instant case, appellant argues that there was insufficient evidence to prove that he knew or had reasonable belief that the license plate was stolen. Appellant contends that even if he was operating the vehicle to which the stolen plate was affixed, he cannot be convicted of receiving stolen property.
At trial, Paul Macino testified that on September 30, 1986, he noticed that his rear license plate, bearing Ohio plate number 836 GDD was missing. He further testified that he did not give anyone permission to remove the plate. Macino identified state's exhibit 17 as the license plate which was stolen from his vehicle.
Officer Freeman identified appellant as the person whom he saw on October 27 1986, driving a vehicle without a front license plate, and a rear license plate bearing Ohio plate number 836 GDD. Freeman identified state's exhibit 17 as the license plate on the rear of the vehicle he had pursued. Freeman further testified that appellant led him on a chase which culminated in appellant ramming the police cruiser with his vehicle causing property damage and personal injury.
This court has carefully reviewed the entire record. Viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of receiving stolen property proven beyond a reasonable doubt.
Appellant also argues that the conviction was against the manifest weight of the evidence. In State v. Thompkins
(1997), 78 Ohio St.3d 380, 386, the Ohio Supreme Court stated that the "legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." The court explained that while an appellate court may determine that a judgment is sustained by sufficient evidence, it may still conclude that the judgment is against the weight of the evidence. (Citation omitted.) Id. at 387.
In contrast to sufficiency, the court stated the following in regard to weight of the evidence:
 "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Citation omitted.) (Emphasis in original.) Id. at 387.
The Ohio Supreme Court also noted that when an appellate court reverses a verdict as against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and "disagrees with the factfinder's resolution of the conflicting testimony." Id. In reviewing the entire record, an appellate court:
 "`weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Upon a review of all the evidence of this case as a whole, we cannot say that the jury lost its way and created a manifest miscarriage of justice. Appellant's conviction for receiving stolen property was not against the manifest weight of the evidence.
Accordingly, appellant's fourth assignment of error is not well-taken.
In his fifth and final assignment of error, appellant argues that the trial court committed prejudicial error when it granted the state's motion to shackle appellant during the trial.
A criminal defendant is generally entitled to attend his trial free of shackling. State v. Morgan (1992), 84 Ohio App.3d 229,231. However, appearing without shackles is not an absolute right and may be necessary for the safe, reasonable and orderly progress of the trial. State v. Carter (1977), 53 Ohio App.2d 125,132. The decision of whether to shackle a defendant lies within the sound discretion of the trial court, and the record should reflect the factors upon which the trial court based its decision. Id.
In the instant case, before the jury had been seated and the trial commenced, a hearing was held on the state's request that appellant be shackled during the trial. During the hearing, Lucas County Deputy Sheriff Allerd Lee Easton testified that in appellant's jail cell he found that the steel on the wall had been tampered with; a dummy that had been made from a sweatshirt, garbage bag, long underwear and blankets; a pair of deputy sheriff pants and a pair of shoes colored black; a hole had been knocked in the wall; and a lighting fixture that had been filed down to a sharp point. The court also made inquires as to appellant's conviction of aggravated murder, two counts, in Kentucky. At the conclusion of the hearing, the trial court granted the request for shackling, stating:
 "* * *. The request for shackling, the circumstances indicating that the Defendant has been convicted of aggravated murder with death penalty imposed, and that conviction has been affirmed on appeal, at least through the Kentucky Supreme Court, and the Defendant further being subject to an additional 30 year sentence, most certainly presents an escape risk which risk has been made manifest by the apparent attempt at such, which was born out through the testimony that the Court has just received. * * *."
Given that the trial court held a hearing as to the state's request for shackling, and stated on the record its reasons for granting said request, we cannot say that the trial court abused its discretion in granting the state's request. Accordingly, we find that appellant's fifth assignment of error is not well-taken.
On consideration whereof, the court finds that the appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs for this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Melvin L. Resnick, J.
 James R. Sherck, J.
 Mark L. Pietrykowski, J.
CONCUR.
[1] The "Telfaire instruction" cautions the jury of the potential unreliability of eyewitness testimony. See 4 Ohio Jury Instructions (1997) 41, Section 405.20(5).