OPINION
{¶ 1} Defendant-appellant, Gary Cardinal ("appellant") appeals his convictions, following a jury trial held in the Franklin County Municipal Court, on three counts of violating a protection order in violation of R.C. 2919.27, all misdemeanors of the first degree.
 {¶ 2} We hasten to note that neither party included a statement of the facts within its brief as required by App.R. 16(A)(6). "Procedural rules adopted by courts are designed to promote the administration of justice and to eliminate undue delay." Robinson v. Kokosing Constr. Co., 10th Dist. No. 05AP-770, 2006-Ohio-1532, ¶ 6. The Ohio Rules of Appellate Procedure "are promulgated so that causes coming before the court will be presented in a clear and logical manner, and any litigant availing himself of the jurisdiction of the court is subjected thereto." Drake v. Bucher (1966), 5 Ohio St.2d 37, 39,34 O.O.2d 53, 213 N.E.2d 182.
 {¶ 3} From our independent review of the record we have gleaned the following relevant facts, which, unless otherwise noted, are undisputed. Appellant and Sharon Cardinal ("Mrs. Cardinal") were married in 1988 and divorced in 2000. Two children were born as issue of the marriage: Lee Cardinal ("Lee"), who was 14 years old at the time of trial, and Kyle Cardinal ("Kyle"), who was 11 years old at trial.
 {¶ 4} On February 4, 2004, appellant pled no contest to misdemeanor charges of child endangering and telephone harassment, and the Franklin County Municipal court found him guilty of these charges.[1] The court issued a civil protection order ("CPO") that protected Mrs. Cardinal, her parents and her brother from contact by appellant. However, that order did not include Lee and Kyle as protected parties. At the plea hearing the prosecutor stated, on the record and in appellant's presence, that appellant was prohibited from contacting Mrs. Cardinal's home except through the children's telephone line. Mr. Cardinal understood that nothing about the disposition of his criminal case prohibited him from calling his children on their own telephone line.
 {¶ 5} Later on the same date of the hearing in appellant's criminal case, however, Mrs. Cardinal obtained an ex parte CPO from the Franklin County Court of Common Pleas, Division of Domestic Relations, in which that court ordered appellant not to have contact with Mrs. Cardinal, Lee or Kyle. On the same date, February 4, 2004, Franklin County Sheriff's Deputy William Eddy ("Deputy Eddy") went to the Franklin County Corrections Center located on Jackson Pike in Columbus, where appellant was incarcerated, and personally served appellant with the ex parte CPO.
 {¶ 6} According to Deputy Eddy, he explained to appellant each and every term of the order, including the identity of the protected persons, and which actions were prohibited under the terms of the ex parte CPO so that "[t]here's no question as to what he needs to do or cannot do." (Tr. 97.) Deputy Eddy also informed appellant that the court would hold a full hearing on the CPO request on February 12, 2004.
 {¶ 7} On direct examination, however, appellant testified that he did not hear Deputy Eddy explain the ex parte CPO to him. He stated that on the evening of February 4, 2004, four deputies arrived at his cell at the same time. Two of the deputies "wanted to talk to [appellant]" and two were there to begin serving dinner to the inmates in that cell. Appellant testified that he shared his cell with 20 or 30 other inmates. Dinner time at the jail involved, "* * * a lot of confusion, to put it mildly. * * * Dinner is the most popular meal. And, you know, it gets pretty loud, commotion, it's all steel and concrete out there, and a lot of noise, a lot of reverberation and confusion in a 15-foot circle." (Tr. 138.)
 {¶ 8} On cross-examination, appellant admitted that he was summoned out into the hallway and that one of the deputies handed him court papers and spoke to him, but, he said, "there was so much confusion, noise, I did not hear anything that he was saying to me in the hallway." (Id. at 141.) Appellant admitted that he signed something indicating he had received the ex parte CPO, but "thought they were the final papers from the plea agreement." He admitted that he is able to read but stated that he did not read the papers he had been given, and never read them until just before Christmas in 2004, when he spoke with one of his defense attorneys and "dug [the ex parte CPO] out of the box that I had." (Id. at 143.)
 {¶ 9} The domestic relations court conducted the full CPO hearing on February 12, 2004. Appellant did not appear at that hearing. Following the hearing, the domestic relations court issued a CPO protecting Mrs. Cardinal and her sons from contact with appellant until February 12, 2009, and suspending appellant's visitation rights with Lee and Kyle.
 {¶ 10} Appellant testified on direct examination that when the full CPO was served on him on February 13, 2004, he was on his way to the airport. As he walked out of his home, "* * * there was a [deputy] sheriff at the door. The sheriff said, "Are you Gary Cardinal?" I said, "Yes, I am." He said, "This is for you. It's from the court, and got back in his patrol car and left and I got back in my car and drove to the airport." (Id. at 139.) Appellant testified further, "I thought that was the final version of what we didn't have time to complete in — here in court." Appellant thought that he could call the children on their telephone line, "[b]ecause [Mrs. Cardinal] told me that it was okay * * * just prior to pleading out." Appellant testified that he did not understand that the CPO he had been handed contained orders about his rights to contact his children that were different from his understanding at the conclusion of his criminal hearing on February 4, 2004.
 {¶ 11} On cross-examination, appellant said that he did not read the CPO he received on February 13, 2004 because he "* * * didn't realize what it was. I thought it was just another court document. And I opened the door, threw it in and flew to Richmond, Virginia." (Id. at 143.) He stated that he had not spoken to any of his defense attorneys since he was in court on February 4, 2004, and did not contact any of them upon receiving the ex parte CPO or the full CPO to inquire about whether he could maintain contact with his children. Appellant conceded that had he read the ex parte CPO he would have been aware of the February 12, 2004 hearing, and had he read the full CPO he would have been aware that he was prohibited from contacting his children.
 {¶ 12} Mrs. Cardinal testified that she has three residential telephone lines. She and her two sons use the main telephone line, the second line is dedicated to a computer modem, and the third line was installed in Lee's room for use by both boys. All three lines are in Mrs. Cardinal's name and she pays the charges for all three lines. On August 22, 2004, appellant violated the terms of the CPO by contacting Mrs. Cardinal's residence via the third telephone line. Lee answered the telephone, told appellant that he was not supposed to be calling, and immediately hung up. The parties stipulated that appellant also called Mrs. Cardinal's third telephone line on September 8th, 9th, 10th, 24th, 25th, 26th, and 27th, 2004.
 {¶ 13} Mrs. Cardinal reported the incidents to the Columbus City Attorney's office and requested a trace on her third residential telephone line. After receiving confirmation from her telephone carrier that appellant had indeed called her residence, Mrs. Cardinal filed complaints dated November 3, 2004. As a result, appellant was charged with the aforementioned counts of violating a protection order, as well as five additional counts of violating a protection order and one count of telephone harassment.
 {¶ 14} Following deliberations, the jury found appellant guilty of all counts. The court sentenced appellant on three of the counts of violating a protection order, but not on the remaining five counts of violating a protection order, or on the count of telephone harassment. As to the remaining three counts of violating a protection order, the court sentenced appellant to one year in jail and suspended six months of the sentence on condition of successful completion of five years' probation. Following this court's decision to allow a delayed appeal, appellant appealed the judgment of the Franklin County Municipal Court and advances the following four assignments of error for our review:
I. The evidence in the trial was insufficient to satisfy the elements of the statutory crime of telephone harassment.
II. The finding that Defendant acted recklessly in making telephone calls to his sons at his ex-wife's home is against the weight of the evidence.
III. Defendant was prejudiced through the failure of the court to remove his shackles in the presence of the jury.
IV. Defendant's [trial] counsel was ineffective in his representation.
 {¶ 15} In support of his first assignment of error appellant argues that the evidence was insufficient to convict him of telephone harassment. However, because the trial court never sentenced appellant on this count, there is no final appealable order to review. It is well established that a judgment of conviction is not a final appealable order until a sentence is rendered. State v. Chamberlain (1964), 177 Ohio St. 104,106-107, 29 O.O.2d 268, 202 N.E.2d 695; Berman v. United States
(1937), 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 ("Final judgment in a criminal case means sentence. The sentence is the judgment.") A court of appeals has jurisdiction to review final appealable orders. Section 3(B)(2), Article IV, Ohio Constitution. Because there is no final appealable order respecting the charge of telephone harassment, we previously dismissed sua sponte appellant's appellate case corresponding to that count. Accordingly, appellant's first assignment of error is overruled as moot.
 {¶ 16} In support of his second assignment of error, appellant argues that the manifest weight of the evidence does not support his conviction for violating a protection order. In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967),10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins,
supra, at 387.
 {¶ 17} Appellant was convicted of multiple counts of violating a protection order, in violation of R.C. 2919.27(A)(1), which provides, "[n]o person shall recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." Appellant concedes that he violated the terms of the CPO, but argues that the weight of the evidence does not support the jury's finding that he did so recklessly.
 {¶ 18} Pursuant to R.C. 2901.22(C), "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 19} Appellant concedes that he was negligent in failing to read the ex parte CPO and the full CPO, and in failing to ensure that he heard what Deputy Eddy was telling him. However, he argues that because he was served with both CPOs so soon after his misdemeanor convictions, he justifiably mistook the CPOs for paperwork related to his criminal case. He also argues that because the court in his criminal case prohibited him from contacting Mrs. Cardinal and several other members of her family, but not the boys, and the prosecutor said that appellant could contact his sons on their telephone line, he believed that the status of his ability to contact them had not changed since he was sentenced. He maintains that his lack of awareness of the restrictions the CPO placed upon him constituted negligence, but it did not rise to the level of recklessness.
 {¶ 20} In response, appellee argues that we must reject the argument that because appellant ignored and did not read the CPO, he is not bound by it. To do otherwise, appellee maintains, would be to eviscerate the protections granted by the issuance of protection orders. Appellee also points out that Deputy Eddy testified that for over two years his duties as a Franklin County Deputy Sheriff were to handle and serve civil and stalking protection orders. He testified that he would serve approximately two orders per day and that he followed an established routine when he served each order, including the one he served upon appellant. He testified that he explained the contents of each paragraph contained in the ex parte CPO, advised appellant of all three names of the protected parties, and informed appellant of the February 12, 2004 hearing that appellant would have an opportunity to attend.
 {¶ 21} After reviewing the record and considering the arguments of the parties, it is clear to this court that the jury did not lose its way in finding that appellant was reckless when he violated the terms of the CPO. He was given every opportunity to be aware of all details of the provisions of the CPO, and yet exhibited a carelessness and recklessness in failing to read both CPOs and failing to listen to Deputy Eddy that far exceeds mere negligence. We see no miscarriage of justice in the result the jury reached and we find that the convictions for violating a protection order were not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is overruled.
 {¶ 22} In support of his third assignment of error, appellant argues that his convictions must be reversed because the court deprived him of a fair trial by failing to allow him to be unshackled during the trial.
 {¶ 23} When the parties filed their briefs the record contained no reference to whether appellant had been shackled, and to what extent, if any, the jury saw appellant in shackles during the course of the trial. Later, we granted appellant's June 7, 2006 motion for leave to supplement the record with a transcript of a hearing held in the trial court on June 6, 2006. On June 16, 2006, appellant filed the transcript of the trial court's June 6, 2006 hearing. Upon this court's review of that transcript, we discovered that the purpose of the June 6, 2006 hearing was to address appellant's App.R. 9(E) motion to correct the record. It was clear that the parties differed on what actually took place at trial.
 {¶ 24} The court of appeals cannot resolve disputes about the trial court's record in the course of an appeal. AssociatedEstates Corp. v. Fellows (1983), 11 Ohio App.3d 112, 114,11 OBR 166, 463 N.E.2d 417. Such a conflict is for the trial court to resolve in its sound discretion. State v. Schiebel (1990),55 Ohio St.3d 71, 82, 564 N.E.2d 54. Thus, "if there are any objections, proposed amendments, or disagreements as to the proper contents of the statement of evidence, these differences must be submitted to and settled by the trial court." McGuire v.Ohio Dept. of Rehabilitation Correction (Sept. 30, 1996), 10th Dist. No. 96API04-444. Accordingly, we ordered the trial court to resolve the factual disputes regarding the record and to approve and settle the statement of the evidence.
 {¶ 25} On August 11, 2006, the municipal court filed with this court a supplemental record, which states as follows:
This Court hereby certifies the below to be a true recollection of the facts in this case:
The defendant, Gary R. Cardinal, was brought into the courtroom for this trial in leg shackles. This was outside the presence of the jury. A discussion was held with all parties present, including the Franklin County Sheriff's office, as to the least restrictive means for controlling this prisoner. After ruling out a stun belt due to the lack of training by the Deputies assigned to escort and guard this prisoner, table skirts were contemplated. This Court has no table skirts so those used in the Franklin County Court of Common Pleas were brought over for potential use. The tables in Municipal Court are thicker than those in the Court of Common Pleas; therefore, the chips (sic) used to hold the skirt to the front of the table were inadequate. This Court then looked closely at the Defendant and determined that his leg shackles were not apparent due to the bagging of his long trousers over his ankles and shoes. The Court explained to all parties that after contemplating all other alternatives that this was the best the Court could do while complying with the control desired by the Sheriff's office. Although counsel for the Defendant did object to the shackles, there was no request for any type of instruction to the jury.
At no time did the Defendant enter or exit the courtroom in the presence of jurors. The jurors always entered after the Defendant was at counsel table and always exited while the Defendant was still at counsel table. When the Defendant testified, he was already on the witness stand when the jury entered the courtroom; however, to the best of the Court's recollection, the Defendant did return to counsel table, which is immediately adjacent to the witness stand, while the jury was present.
 {¶ 26} Appellant's argument in support of his third assignment of error is brief; he argues simply that, "* * * the prejudicial effect of the leg shackles may have been sufficient for the jury to convict him on the charges." (Brief of appellant, 12.)
 {¶ 27} It has long been held that "[n]o person should be tried while shackled * * * except as a last resort." Illinois v.Allen (1970), 397 U.S. 337, 344, 90 S.Ct. 1057, 51 O.O.2d 163,25 L.Ed.2d 353. "[T]he presence of restraints tends to erode the presumption of innocence that our system attaches to every defendant." State v. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304,776 N.E.2d 26, ¶ 79; State v. Morgan (1992),84 Ohio App.3d 229, 231-232, 616 N.E.2d 941. "The placing of restraints upon a criminal defendant during his trial may significantly affect the jury's perception of the defendant, and may thus infringe upon the presumption of innocence, by stripping the defendant of the physical indicia of innocence." State v. Frazier, 1st Dist. No. C-030571, 2004-Ohio-4108, ¶ 3.
 {¶ 28} However, a defendant does not have an absolute right to be free from shackles in the courtroom. State v. Armstead
(Nov. 27, 2001), 10th Dist. No. 01AP-44, 2001-Ohio-4045, citingState v. Blackmon (Feb. 14, 1995), 10th Dist. No. 94APA05-773. In some circumstances, shackling is necessary for the safe, reasonable and orderly progress of the trial. Morgan, supra, at 232, citing State v. Carter (1977), 53 Ohio App.2d 125, 132, 7 O.O.3d 90, 372 N.E.2d 622. Shackling is an "extreme measure[.]"State v. Cunningham (July 25, 1991), 10th Dist. No. 90AP-427, 1991 Ohio App. LEXIS 3529, at *13. However, "it is widely accepted that a prisoner may be shackled where there is a danger of violence or escape." Franklin, supra, at ¶ 79.
 {¶ 29} "Since it is the responsibility of the trial court to insure that an accused receives a fair and impartial trial, it is a matter of due process that the trial court must exercise its discretion in such matters." Cunningham, supra, at *12. The decision to shackle lies within the sound discretion of the trial court and will not be overturned by reviewing courts unless that discretion was abused. Id. at *13. This is because the trial court "* * * is in a position to consider the prisoner's actions both inside and outside the courtroom, as well as his demeanor while court is in session." Franklin, supra, at ¶ 79.
 {¶ 30} But the trial court must actually exercise its own discretion and not simply defer to security personnel without inquiring into the specific circumstances upon which officials' security concerns are based. Woodards v. Cardwell (C.A.6, 1970), 430 F.2d 978, 982, 55 O.O.2d 405; see, also, State v.Nickelson (Sept. 27, 1994), 10th Dist. No. 94APA04-582. "Moreover, the record should reflect factors upon which the trial court exercised its discretion." State v. Jones, 10th Dist. No. 02AP-1390, 2003-Ohio-5994, ¶ 24, citing State v. Morgan (1992),84 Ohio App.3d 229, 232, 616 N.E.2d 941; see, also, Carter,
supra, at 132; Franklin, at ¶ 79. "Where the facts and circumstances surrounding [the defendant] illustrate a compelling need to impose exceptional security procedures, the trial court's exercise of discretion in this regard should not be disturbed unless its actions are not supported by the evidence before it." Jones, supra, at ¶ 25, citing Franklin, supra, at ¶ 82.
 {¶ 31} In the present case, the only mention in the record regarding shackling is contained in the trial court's App.R. 9(E) supplemental record. It reveals that appellant was shackled throughout his trial. The record contains no mention of the specific circumstances upon which the Sheriff's office based its request for shackles, or the specific facts and circumstances upon which the court determined that physical restraint was necessary to the safe and orderly progress of the trial; thus, we are left with the impression that the court merely deferred to the sheriff's deputies' request that appellant remain shackled.
 {¶ 32} Moreover, the record before us does not demonstrate the necessity of having appellant shackled during his trial. There is no evidence that appellant presented a danger of violence, disruptive outbursts or escape, or that he had been difficult to control during his time in jail. Therefore, we find that the decision to shackle appellant throughout his trial was error.
 {¶ 33} The record further discloses that appellant appeared before the jury in his shackles. We are unable to determine the precise manner (e.g., visually or audibly) or the extent to which the jury was aware that appellant was shackled. However, we cannot presume that the jury was unaware of appellant's shackles, given that he descended from the witness stand and retook his seat at counsel table in the jury's presence. The right to appear in the courtroom free of restraint is a right of federal constitutional dimension. State v. Adkins (May 24, 1989), 4th Dist. No. 1720; Woodards v. Cardwell (C.A.6, 1970),430 F.2d 978, 980, 55 O.O.2d 405. But shackling a defendant without exercising the required discretion is an error that does not require automatic reversal. Adkins, supra.; State v.Tyree (July 15, 1994), 6th Dist. No. 94FU000007. "A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt." State v. Conway,108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 78, citingChapman v. California (1967), 386 U.S. 18, 24, 87 S.Ct. 824,17 L.Ed.2d 705; see, also, Adkins, Tyree, supra.
 {¶ 34} In the present case, appellant admitted that he was the subject of a valid protection order prohibiting him from contacting Mrs. Cardinal and his sons, and that he made each and every telephone call in question after being served with the protection order. Moreover, the manifest weight of the evidence demonstrated that he made the calls with reckless disregard for circumstances under which he had been amply informed not to do so. Because appellant's admissions made the case against him so strong, we hold that the error here was harmless beyond a reasonable doubt and therefore did not deprive appellant of due process. Accordingly, we overrule appellant's third assignment of error.
 {¶ 35} In his fourth and final assignment of error, appellant argues that his trial counsel was ineffective because counsel failed to object on the record to the use of leg shackles. However, because the record reveals that counsel did object to the use of leg shackles during appellant's trial, this assignment of error is moot. Accordingly, it is overruled.
 {¶ 36} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
Bryant and Petree, JJ., concur.
[1] Appellant timely appealed his convictions. On August 11, 2004, the Franklin County Municipal Court granted a request to suspend its sentence pending the outcome of appellant's appeal. On December 9, 2004, this court determined that appellant's speedy trial rights had been violated, reversed his convictions and remanded the case to the trial court with instructions to dismiss the charges. See Columbus v. Cardinal, 10th Dist. No. 04AP-229, 2004-Ohio-6605.