**The STATE of Ohio, Appellee,**

v.

**BRANDLE, Appellant.**

[Cite as *State v. Brandle* (1996), 116 Ohio App.3d 753.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 94–C–76.

Decided Dec. 19, 1996.

754

*Robert Herron,* Columbiana County Prosecuting Attorney, and *Tim McNicol,* Assistant Prosecuting Attorney, for appellee.

*R. Eric Kibler,* for appellant.

---

JOSEPH E. O'NEILL, Presiding Judge.

The appellant appeared for trial before a jury in the county court to answer to three charges. In Count I it was charged that on or about August 4, 1994, in the village of Lisbon, Columbiana County, Ohio, the appellant did knowingly carry or have concealed on his person or concealed ready at hand a deadly weapon in violation of R.C. 2923.12(A), a misdemeanor of the first degree. In Count II it was charged that on or about August 4, 1994, in the village of Lisbon, Columbiana County, Ohio, the appellant did recklessly or by force resist or interfere with the lawful arrest of himself or another in violation of R.C. 2921.33(A), a misdemeanor of the first degree. In Count III it was charged that the appellant on August 4, 1994, in the village of Lisbon, Columbiana County, Ohio, did recklessly cause inconvenience, annoyance, or alarm to another by engaging in fighting, threatening harm to persons or property, or in violent or turbulent behavior, after being given reasonable warning or request to desist in violation of R.C. 2917.11(A)(1), a misdemeanor of the fourth degree.

Following a trial and deliberations, the jury found the defendant guilty of carrying a concealed weapon in violation of R.C. 2923.12(A), guilty of disorderly conduct in violation of R.C. 2917.11(A), a fourth-degree misdemeanor, and not guilty of resisting arrest. Sentences were imposed upon the appellant, and a timely notice of appeal was filed.

The first assignment of error contends that the trial court abused its discretion and committed prejudicial error when it permitted the appellant to appear for trial before the jury in handcuffs during the entire length of the trial.

The first point at which the issue of handcuffs arose was following the submission by the state of its evidence and a motion for acquittal filed by the

appellant. At that point, the trial judge stated the following to counsel outside the presence of the jury:

"All right, we are back on the record in *State of Ohio v. Slade L. Brandle.* The court has before it and has had an opportunity to review with both counsel for the defendant and the prosecutor, representing the State of Ohio, a tape that was recorded at the Columbiana County Jail, and the Court is satisfied that this tape contains the voice of the defendant on it. The Court would indicate from what it has heard on this tape, and comments made by the defendant on this tape, the Court is going to enter this into the record as an exhibit only for use only for the purpose of an appeal should occur in this matter. And this will not be an exhibit to be heard or given to the jurors, as the Court would note that this is being done outside of the hearing of the jurors. And the purpose of admitting this tape into evidence for that appeal purpose, if necessary, is based upon the fact that the Court has had the defendant handcuffed the entire trial, and that this point in time sees no reason to do so. Has done that based upon comments made by the defendant on this tape for the safety of all concerned within the courtroom. Is there anything that either counsel wishes to say with regards to this?"

In response, counsel for the defendant stated, "Okay, well, at least I know what it is."

Prior to trial, counsel for the appellant moved the court to consider referring the appellant apparently to some psychiatric institution for treatment. In support of this motion, counsel stated to the trial judge:

"[A]nd also having discussed with Slade some of the way that he is going to treat this case, which I think is, is, uh, he is going to treat it lightly. I think he is gonna treat it in such a manner as to potentially make a mockery of the, uh, the judicial system, and the jury trial system, possibly even endangering jurors in the process, and uh, from uh me attempting to discuss with him the basis of the case, the elements of the offense and the evidence against him, uh, and also, uh, from hearing a tape of his conduct at the jail this morning, which was violent and turbulent, threatening and uh, and distasteful to say the least, um, and basically experiencing the same thing on a smaller scale with Slade this morning, as well as yesterday when I conferred with him at the jail * * *."

There was no mention of the appellant's appearing at trial in handcuffs at any point in the proceedings before the close of the state's case. Appearance at trial before a jury in shackles has been addressed by the Court of Appeals for Richland County, in *State v. Morgan* (1992), 84 Ohio App.3d 229, 616 N.E.2d 941, wherein the first headnote reads as follows:

"Although criminal defendant is generally entitled to appear in court without shackles, as presumption of innocence may be undermined when defendant is

presented in restraints, in some circumstances it is necessary for safe, reasonable, and orderly process of trial."

That court held that the decision whether to shackle a defendant lies in the sound discretion of the court and that the record should reflect the factors upon which the court exercised its discretion.

Most certainly, the county court judge had more than sufficient factors placed before him to justify his order that the appellant appear for trial before the jury in handcuffs. As we have previously noted, there was never an objection during the state's portion of the case as to the issue of handcuffs.

■ Under this assignment of error, the appellant also argues that the trial court erred by not giving curative instructions explaining to the jury why the appellant was in shackles. Upon our review of the transcript, we do not find that this argument was ever placed before the trial judge in the form of a request to give a curative instruction. In view of the failure of the appellant to raise this issue with the trial judge, we find that this assigned error is without merit as having been waived by the defendant-appellant. We must further comment that the evidence presented by the prosecution was more than sufficient to support the finding by the jurors.

■ The second assignment of error complains that the verdict of guilty of carrying a concealed weapon was against the manifest weight of the evidence, as reasonable minds could come to but one conclusion in examining the state's exhibit and that conclusion is that the objects introduced were not weapons and were not concealed but were in plain view.

R.C. 2923.12 reads as follows:

"(A) No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance."

The term "deadly weapon" is defined in R.C. 2923.11, which reads as follows:

"(A) 'Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

On its side of the case, the state called Sgt. John Higgins of the Lisbon Police Department. Higgins testified that he had been a policeman for eighteen years. Higgins testified that, upon his search of the defendant-appellant in the Lisbon Police Station, he removed a makeshift knife that was concealed on the appellant's person. He also removed what appeared to be a rock that was wrapped with some string and what appeared to be a plastic knife. During cross-examination, Sgt. Higgins was asked:

"Q Which one of those is the deadly weapon?

"A   They both could be, in fact all three pieces could be, that they are in three pieces now."

In *State v. Anderson* (1981), 2 Ohio App.3d 71, 2 OBR 79, 440 N.E.2d 814, the court stated in the syllabus as follows:

"In order to sustain a conviction for carrying a concealed weapon, the state must not only show that the offending instrument was capable of inflicting death, but also, that the instrument was either: (i) designed or specially adapted for use as a weapon; or (ii) possessed, carried or used as a weapon.   When an instrument is readily identifiable as one capable of inflicting death, such as a knife, proof of either additional element is nonetheless essential to sustain a conviction for carrying a concealed weapon under R.C. 2923.12."

The three weapons removed from the appellant were shown to Sgt. Higgins, and then the following dialogue took place:

"Q   Are you afraid of this?

"A   With you having it, ha, ha, ha * * * ?

"THE COURT:  Just answer his question.

"A   You mean with it sitting there like that am I afraid of it, no.

"Q   How about this?

"A   Not as it sits, no.   I wouldn't want somebody throwing it at me, or coming at me with either one of them."

It can very readily be deduced from this opinion of Sgt. Higgins that the knife was not only an instrument capable of inflicting death but was also specially adapted for use as a weapon.

As to the issue of whether these exhibits were concealed at the time of the defendant-appellant's arrest, Sgt. Higgins testified that all three objects were hidden inside of his pants and that his shirt was hanging over his pants.   He did admit that part of one of the exhibits, some string, was observable.

Appellant contends that there was no evidence that these weapons were concealed because Sgt. Higgins testified that he was able to see a part of the weapons.   In *State v. Coker* (1984), 15 Ohio App.3d 97, 98, 15 OBR 127, 128, 472 N.E.2d 747, 748, the Court of Appeals for Summit County, stated:

"[I]t is sufficient to support a conviction of carrying a concealed weapon to prove only that ordinary observation would give no notice of its presence.   This is a question of fact to be resolved by the trier of fact.   There must be an evidentiary basis established by the proof upon which the jury could find that the weapon was concealed."

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In support of its decision, the court in *Coker* cited *State v. Pettit* (1969), 20 Ohio App.2d 170, 49 O.O.2d 200, 252 N.E.2d 325, wherein the court held that a weapon need not be totally hidden from observation in order to render it concealed within the meaning of the statute.

This second assignment of error is without merit.

▮ The third assignment of error complains that the trial judge abused his discretion in allowing evidence of the appellant's prior conviction of gross sexual imposition.

The appellant testified in his own behalf. During his direct testimony, the defendant-appellant alluded to his release from a penitentiary. During cross-examination by the state, the following dialogue took place:

"Q When did you get out of prison?

"A May 27th.

"Q Is that for a felony conviction within the last ten years?

"A Sure was."

There was an objection which was overruled.

"Q How long were you in prison, Mr. Brandle?

"A Less than nine months.

"Q And what were you in prison for?

"A A, uh, gross sexual imposition.

"Q Is that a felony offense?

"A Sure, it's a felony offense.

"Q Felony of the third degree; right?

"A Right.

"Q Did you plead guilty to that offense?"

The prosecution then offered into evidence a certified copy of the judgment entry setting forth the conviction of the defendant-appellant. Evid.R. 609(A) provides:

"(A) General Rule. For the purpose of attacking the credibility of a witness:

" * * * *

"(2) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the

probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

The appellant had been convicted of a felony of the third degree on July 29, 1993 and sentenced to eighteen months. Thus, the requirements of the degree of the crime and the fact that it had occurred within the past ten years were both met.

Additionally, during his instructions to the jury, the trial judge stated:

"Also, I am going to instruct the jury that evidence presented as to the felony conviction, of which you will have an exhibit before you, can be used to impeach the defendant, and is not to be used as to the propensity of the defendant to commit crimes, than any crimes that he has been charged with. So, you are not to look at that and say because he did this, therefore, he must have committed these crimes. It can only be used to impeach his credibility."

The third assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GENE DONOFRIO and COX, JJ., concur.