OPINION
{¶ 1} Appellant, Vincent S. McCaleb, appeals from a jury conviction by the Lake County Court of Common Pleas, for felonious assault, in violation of R.C. 2903.11(A)(1), aggravated burglary, in violation of R.C. 2911.11(A)(1), and intimidation of a victim in a criminal case, in violation of R.C. 2921.04(B). For the reasons that follow, we affirm appellant's conviction and sentence.
 {¶ 2} On April 26, 2002, appellant was indicted by the Lake County Grand Jury on the following counts: (1) felonious assault; (2) aggravated burglary; and (3) intimidation of a victim in a criminal case. A jury was impaneled, and trial began on December 5, 2002.
 {¶ 3} The following facts were alleged during trial. On the evening of January 25, 2002, appellant visited his girlfriend, and mother of his baby daughter, Maureen Hickey ("Maureen"), at her house in Painesville, Ohio. Around 11:00 p.m., Maureen went to a local bar named Slam Jam's, and appellant departed to his residence. After consuming alcohol, Maureen left Slam Jam's at approximately 2:00 a.m. the next morning and went back home.
 {¶ 4} That same morning of January 26, 2002, at 8:00 a.m., Maureen arrived at her place of employment, where she worked as a pre-school teacher. One of her coworker's, Eve Kellerman ("Eve"), testified that she saw Maureen crying prior to the start of class. Eve stated that when she approached Maureen, she noticed bruises on her face and neck. As a result, Eve drove Maureen to the nearest hospital.
 {¶ 5} Eve further testified that while they were driving to the hospital, Maureen told Eve the bruises were the result of appellant beating her over a period of several hours that morning. In addition, Eve stated that Maureen showed her numerous bruises on her back which were a product of the same beating.
 {¶ 6} Once at the hospital, a medical report was taken which detailed Maureen's injuries. The report confirmed extensive injuries to Maureen's head, back, neck, and chest. Maureen was also diagnosed with a fracture to her left forearm. The report listed appellant as the cause of these injuries and was entered as an exhibit at trial. During trial, the attending physician provided testimony relating to the medical report and his physical examination of Maureen.
 {¶ 7} That same day, at approximately 11:00 a.m., Patrolman John McMinn ("Ptlm. McMinn"), of the Painesville City Police Department, interviewed Maureen at the hospital. At trial, Ptlm. McMinn testified that Maureen gave him a statement which alleged that her injuries originated as a result of appellant beating her from the time she arrived home from Slam Jam's, until 7:45 a.m. that morning. Specifically, Ptlm. McMinn testified Maureen informed him that appellant approached her outside of Slam Jam's and began yelling at her for being in the company of another man. When Maureen got in her car and began to drive home, appellant pursued her in his truck. Once at her home, appellant followed her inside and proceeded to kick and punch her over the course of several hours.
 {¶ 8} Further testimony at trial established that, several weeks later, Maureen went to the police department to report that appellant had broken into her house. On February 14, 2002, Patrolman John Levicky ("Ptlm. Levicky") interviewed Maureen with respect to appellant's break-in. Ptlm. Levicky testified that, while in a visibly nervous state, Maureen informed him that around 12:00 a.m. that same morning of February 14, 2002, appellant had entered her house by forcefully breaking through her front door. Maureen further told Ptlm. Levicky that once inside the house, appellant began threatening her and ordered her to tell the police that someone else had assaulted her on January 26, 2002.
 {¶ 9} On February 20, 2002, immediately following appellant's arrest, Sergeant Denise Mercsak ("Sgt. Mercsak") testified that she interviewed Maureen regarding the initial assault and subsequent break-in. Sgt. Mercsak's testimony revealed that Maureen again stated appellant had beaten her for several hours on the morning of January 26, 2002, and forcefully entered her house and threatened her on the morning of February 14, 2002.
 {¶ 10} During trial, Maureen testified as the court's witness pursuant to Evid.R. 614(a). On cross-examination by the prosecution, Maureen testified that she did not remember giving any statements in which she accused appellant of beating her. She alleged that her lack of recollection was due to frequent drug and alcohol use. Maureen further testified that she knew that appellant did not assault her and was not the cause of her injuries.
 {¶ 11} In rebuttal, the prosecution used the aforementioned statements in its examination of Maureen. As mentioned previously, the prosecution also presented the testimony of Eve, Ptlm. McMinn, Ptlm. Levicky, and Sgt. Mercsak, and entered Maureen's medical report as an exhibit.
 {¶ 12} Following the trial, the jury unanimously found appellant guilty on all three counts. On October 4, 2002, the trial court issued a judgment entry sentencing appellant to seven years of incarceration for felonious assault, seven years of incarceration for aggravated burglary, and two years of incarceration for intimidation of a victim in a criminal case. Each term of incarceration was to be served concurrently, but consecutively to a term of incarceration appellant was currently serving in federal prison.
 {¶ 13} From this judgment, appellant filed a timely notice of appeal and sets forth the following seven assignments of error:
 {¶ 14} "[1.] Defendant-appellant, an African American male, was denied a fair trial in violation of his rights as guaranteed by the Sixth Amendment and the equal protection clause of theFourteenth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution where his jury and jury venire were only comprised of Caucasian individuals.
 {¶ 15} "[2.] Defendant-Appellant's Constitutional rights to due process under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution were prejudiced by the ineffective assistance of trial counsel.
 {¶ 16} "[3.] The trial court erred to the Defendant's prejudice when it allowed for the admission of evidence which was highly prejudicial to the defense and violated the Defendant's rights to a fair trial as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 17} "[4.] The Prosecutor's misconduct during the course of trial denied the Defendant-Appellant of due process as guaranteed by the Fourteenth Amendment of the United States Constitution and by Article I, Section 10 of the Ohio Constitution.
 {¶ 18} "[5.] The Defendant-Appellant was denied a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitutions [sic] and by Article I, Section 10 of the Ohio Constitution where the jury saw him escorted by police to an from the courtroom and transported to and from the courthouse in a police vehicle, thereby unduly prejudicing him and violating his presumption of innocence.
 {¶ 19} "[6.] The trial court's consideration of Defendant-Appellant's lack of remorse during sentencing violated the Defendant-Appellant's Fifth Amendment right as guaranteed by the United States Constitution and Article I, Section 10 of the Ohio Constitution, to not be compelled to be a witness against himself and constitutes an abuse of discretion that necessitates a resentencing hearing before a different court.
 {¶ 20} "[7.] A verdict of guilty was against the manifest weight and sufficiency of the evidence."
 {¶ 21} For purposes of clarity, we will discuss appellant's assignments of error out of order. Under his first assignment of error, appellant argues that he was deprived of a fair trial because the jury selection process was inherently biased and resulted in an all-white jury venire and impaneled jury. Appellant contends that the impaneled jury did not establish a fair representative cross-section of the black community. In support of this contention, appellant cites to various Lake County census figures and voter registration statistics in an attempt to demonstrate that the selection of registered voters is not an impartial means by which to select a jury venire.
 {¶ 22} At the outset, we note that appellant failed to offer an objection challenging the jury venire prior to the examination of jurors as required by Crim.R. 24(E). Accordingly, appellant has failed to properly preserve this error for purposes of appellate review. See, e.g., State v. Powell (Dec. 31, 1998), 11th Dist. No. 97-L-253, 1998 Ohio App. LEXIS 6358, at 20. See, also, State v. Lundgren (Sept. 1, 1993), 11th Dist. Nos. 90-L-15-140 and 91-L-036, 1993 Ohio App. LEXIS 4394, at 100.
 {¶ 23} Even assuming that appellant had stated a proper objection, it is clear that his argument is without merit. "In order to establish a violation of the fair representative cross-section of the community requirement for a petit jury array * * *, a defendant must prove: (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process." State v. Fulton (1991), 57 Ohio St.3d 120, paragraph two of the syllabus. Appellant was required to establish all three of the foregoing prongs. See, e.g., State v. Moore,81 Ohio St.3d 22, 28, 1998-Ohio-441.
 {¶ 24} Under R.C. 2313.08, when selecting names of individuals to serve on a jury, the jury commissioners may select such names from a list of electors certified by the board of elections, pursuant to R.C. 2313.06. The Ohio Supreme Court has consistently upheld the constitutionality of calling jury venires from voter registration lists as described in R.C. 2313.08. See, e.g., State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 106; Moore at 28; State v. Johnson (1972),31 Ohio St.2d 106, 114. "This practice does not systematically exclude blacks from the jury-selection process." Yarbrough at ¶ 106, citingMoore at 28.
 {¶ 25} Because the use of voter registration lists does not systematically exclude a distinctive group of the community from the jury selection process, appellant's claim is not well-taken. Furthermore, appellant has failed to present affirmative evidence to demonstrate that the representation of blacks in jury venires is not fair and reasonable in relation to the number of blacks in the community. Thus, for this additional reason, appellant's first assignment of error is without merit.
 {¶ 26} Under his third assignment of error, appellant disputes the admissibility of various portions of testimony admitted during trial. Appellant maintains that the trial court abused its discretion by admitting the following instances of testimonial evidence over defense counsel's objections.
 {¶ 27} At the outset, we note that the determination to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed by an appellate court absent a showing of an abuse of discretion. State v. Sledge, 11th Dist. No. 2001-T-0123, 2003 Ohio App. LEXIS 3644, 2003-Ohio-4100, at ¶ 20, citing Renfro v. Black (1990), 52 Ohio St.3d 27, 32. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Montgomery
(1991), 61 Ohio St.3d 410, 413.
 {¶ 28} First, appellant argues that the trial court erred in failing to exclude Maureen's testimony regarding her impression as to whether the hospital staff thought she was drunk. This testimony arose during the prosecution's cross-examination of Maureen, to wit:
 {¶ 29} "Q. Now, they never did a tox screen on you, did they?
 {¶ 30} "A. No, they didn't.
 {¶ 31} "Q. Didn't think you were drunk to take any blood, anything like that.
"Mr. Perdue: Objection.
"The Court: Overruled. You may answer.
 {¶ 32} "A. They didn't think I was drunk."
 {¶ 33} Appellant argues on appeal that the foregoing testimony was unfairly prejudicial because it was impossible for Maureen to ascertain what the medical personnel thought with respect to her intoxication.
 {¶ 34} The form of the prosecution's question was technically improper. However, even assuming appellant could establish unfair prejudice, it is clear that any error in allowing testimony to this effect is harmless. The prosecution could have asked her if the hospital staff did anything to indicate they felt she was intoxicated. Questioning along this line was relevant to her claim that she was too intoxicated to remember making various statements that day. Further, the testimony of Maureen's attending physician on the morning of the assault, Dr. Edmundo Mandac ("Dr. Mandac"), noted that Maureen was conscious and that she understood his questions and gave intelligible answers. Moreover, Dr. Mandac testified that there was no indication that Maureen was under the influence of drugs or alcohol while at the hospital. Accordingly, any error in the form of the question as to the hospital staff's impression of her sobriety was harmless. This portion of appellant's third assignment of error is not well-taken.
 {¶ 35} Next, appellant asserts that the trial court abused its discretion by allowing Eve to testify that Maureen was afraid of appellant following the assault, as such testimony was purely speculative, to wit:
 {¶ 36} "Q: Now, did [Maureen] express to you any feelings towards [appellant] at that point in time?
 {¶ 37} "* * *
"Mr. Perdue: Objection.
"The Court: Overruled.
 {¶ 38} "A: She was very scared that if she said anything that [appellant] would come back and beat her more, or even kill her."
 {¶ 39} Speculative testimony is any testimony given by a witness which is not based upon the personal knowledge of such witness or facts in evidence. See, e.g., Savage v. Thomas (Aug. 18, 1995), 11th Dist. No. 94-L-062, 1995 Ohio App. LEXIS 3401, at 14.
 {¶ 40} A portion of Eve's testimony reflected her observation of Maureen's physical and emotional condition. The portion of Eve's testimony which reflected her observation of Maureen's appearance and emotional state is not speculative. Therefore, this portion of appellant's third assignment of error is not well-taken.
 {¶ 41} We also note that Eve's testimony contained admissible hearsay. Evid.R. 803(2), provides "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[,]" is an admissible exception to the hearsay rule. "For a purported excited utterance to be admissible there must have been: (1) an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the event." State v. Shelton, 11th Dist. No. 2001-P-0050, 2002-Ohio-5157, at ¶ 24, citing State v.Taylor (1993), 66 Ohio St.3d 295, 300-301.
 {¶ 42} "Additionally, when deciding whether a statement is an excited utterance, the court should consider: (a) the lapse of time between the event and the declaration; (b) the mental and physical condition of the declarant; (c) the nature of the statement; and (d) the influence of intervening circumstances."Shelton at ¶ 25.
 {¶ 43} "There is no per se amount of time after which a statement can no longer be considered an excited utterance."State v. Chappell (1994), 97 Ohio App.3d 515, 522-523. While the passage of time is not dispositive of the question, it is a factor the court must consider when deciding whether the excited utterance exception is applicable. Id. at 523. "The controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." State v. Ashford
(Feb. 16, 2001), 11th Dist. No. 99-T-0015, 2001 Ohio App. LEXIS 583, at 14.
 {¶ 44} Maureen's statements to Eve expressing her fear of appellant were made on the morning of her assault, approximately two hours after appellant had allegedly ceased beating her. Eve stated that Maureen was visibly upset and was crying uncontrollably prior to her arrival at the hospital. Eve also testified that, at the time of Maureen's statements, she required physical assistance to get into a car to be transported to the hospital.
 {¶ 45} The foregoing was evidence that Maureen's statements to Eve were related to a startling event Maureen personally experienced and that she was still exhibiting the stress or excitement of the event. The observable mental and physical condition of Maureen supported the conclusion that her statements were spontaneous and impulsive rather than a product of reason and reflection. Thus, Maureen's statements represented an excited utterance and were admissible hearsay pursuant to Evid.R. 803(2). For this additional reason, this portion of appellant's third assignment of error is not well-taken.
 {¶ 46} Appellant also submits that the trial court erred in admitting Eve's testimony over an objection which stated that, as a fellow victim of spousal abuse, she felt the need to "help" Maureen. Appellant claims that such testimony was purely speculative.
 {¶ 47} Again, Eve's statement was based upon her personal knowledge of Maureen's statement of recent abuse by a boyfriend, as well as Eve's visual observation of Maureen's battered condition. Thus, her testimony was not speculative. This portion of appellant's third assignment of error is not well-taken.
 {¶ 48} Appellant further contends that the trial court abused its discretion by failing to exclude the testimony of Ptlm. Levicky. Specifically, appellant's argument, in its entirety, states, "the trial court erred in admitting testimony from Officer Levicky as to what [appellant] told Maureen. (T.p. 212-214.) This evidence was extremely prejudicial and admitted over a continuing objection. (T.p. 212-214.) Further, such testimony constituted inadmissible hearsay."
 {¶ 49} Appellant has failed to present any support or authority for this portion of his third assignment of error as required by App.R. 16(A)(7). Instead, appellant presents a general objection to the admission of Ptlm. Levicky's testimony that fails to provide any legal analysis or reasoning. Thus, pursuant to App.R. 12(A)(2), we may disregard this portion of appellant's third assignment of error. Nevertheless, in the interest of justice, we will attempt to address the issues raised by appellant.
 {¶ 50} At trial, Ptlm. Levicky's testimony included a recitation of his interview with Maureen. Ptlm. Levicky testified to various statements made by Maureen during the interview. Her statements to Ptlm. Levicky disclosed the factual events surrounding appellant's subsequent break-in and intimidation of Maureen on the morning of February 14, 2002, prior to and during the break-in. Specifically, she informed Ptlm. Levicky that appellant had called her on the phone insisting that she speak with him regarding the assault. Maureen then informed Ptlm. Levicky that appellant broke into the house and began intimidating her with respect to the assault charges.
 {¶ 51} Appellant argues that Ptlm. Levicky's testimony regarding what appellant told Maureen was inadmissible hearsay. Ptlm. Levicky's testimony included statements made by appellant to Maureen, and then relayed by Maureen to Ptlm. Levicky. Therefore, the statement made by Ptlm. Levicky at trial, which included appellant's statements, is considered hearsay within hearsay.
 {¶ 52} Evid.R. 805 states, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Accordingly, we will review each level of the statements to determine whether Ptlm. Levicky's testimony was admissible.
 {¶ 53} First, the statements made by appellant, and included within Maureen's statement to Ptlm. Levicky, are not hearsay pursuant to Evid.R. 801(D)(2)(a). Evid.R. 801(D)(2)(a) states, "[a] statement is not hearsay if * * * the statement is offered against a party and is * * * his own statement." This rule includes statements made by a defendant in a criminal case.State v. Abercrombie (Sept. 2, 1993), 8th Dist. No. 63689, 1993 Ohio App. LEXIS 4238. Furthermore, the statement does not need to be against the interest of the declarant at the time it is made. Staff Note to Evid.R. 801(D)(2).
 {¶ 54} In the instant case, if appellant's statements to Maureen are isolated, they do not constitute hearsay as they were his own statements. Specifically, the statements included appellant's intimidating comments ordering Maureen to drop the assault charge. Thus, the first level of hearsay within hearsay was admissible, as appellant's statements to Maureen were not hearsay under Evid.R. 801(D)(2).
 {¶ 55} The second level of hearsay occurred when appellant's above statements were repeated by Ptlm. Levicky in his own testimony. Ptlm. Levicky's testimony included a detailed recitation of Maureen's physical and emotional behavior at the time she made these statements. Despite the lapse of approximately eight to nine hours after the break-in, Ptlm. Levicky testified that Maureen was visibly upset during the interview. He stated that when she arrived at the police station, she was nervous and kept "looking over her shoulder." As a result, Ptlm. Levicky invited her inside an office to conduct the interview. Ptlm. Levicky testified that, during the interview, "[s]he was still upset, but nervous, looking over her shoulder, * * * she was just upset and crying."
 {¶ 56} His observation of Maureen's manner and condition is some credible evidence that she was still under the influence of a startling event or condition. Her demeanor and physical condition, as described by Ptlm. Levicky, corroborated the conclusion that her statement was the result of impulse, rather than reason and reflection. Moreover, there was no evidence or suggestion of any intervening circumstances that might have impacted the reliability of Maureen's statement to Ptlm. Levicky. Thus, Maureen's statement to Ptlm. Levicky was admissible as an excited utterance under Evid.R. 803(2).
 {¶ 57} Because both levels of hearsay were admissible, Ptlm. Levicky's testimony did not need to be excluded as hearsay within hearsay. Thus, this portion of appellant's third assignment of error is without merit.
 {¶ 58} Appellant similarly contends that Sgt. Mercsak's testimony relating to appellant's statements was inadmissible hearsay. Again, Sgt. Mercsak's testimony at trial originated from her interview with Maureen. During the interview, Maureen reiterated the factual events pertaining to appellant's assault, break-in, and intimidation. Sgt. Mercsak's testimony at trial also included statements made by appellant to Maureen. Like Ptlm. Levicky's testimony, Sgt. Mercsak's testimony is hearsay within hearsay.
 {¶ 59} However, unlike Ptlm. Levicky's testimony, Sgt. Mercsak failed to provide any testimony which would establish that Maureen was under the stress or excitement of the assault, break-in, and intimidation. Moreover, Maureen's interview with Sgt. Mercsak was made days after the startling events which were the substance of her statements. Accordingly, we are unable to conclude that Maureen's statements were made impulsively. Thus, Evid.R. 803(2) was inapplicable.
 {¶ 60} After reviewing the relevant hearsay exceptions, it is clear that none apply and, therefore, Sgt. Mercsak's testimony was inadmissible hearsay and error. However, Sgt. Mercsak's testimony merely repeats the compelling testimony of Ptlm. McMinn and Eve with respect to the assault, and the testimony of Ptlm. Levicky regarding the breakin and intimidation. Therefore, any error in admitting the testimony of Sgt. Mercsak is harmless error. This portion of appellant's third assignment of error is not well-taken.
 {¶ 61} Under his fourth assignment of error, appellant maintains that the prosecutor engaged in numerous instances of prosecutorial misconduct. Appellant claims that due to the prosecutor's misconduct he was denied a fair trial.
 {¶ 62} To make a finding of prosecutorial misconduct, a reviewing court must determine whether the challenged statements were improper, and if so, whether the remarks affected the defendant's substantial rights. State v. Smith,87 Ohio St.3d 424, 442, 2000-Ohio-450. A conviction will not be reversed because of prosecutorial misconduct, unless it so taints the proceedings that a defendant is deprived of a fair trial. Id.
 {¶ 63} Appellant first argues that the prosecutor allegedly threatened Maureen after she had recanted her original statements made to the police and hospital staff. Specifically, Maureen testified that, prior to trial, the prosecutor told her, "if [she] didn't stick with [her] first statement that [she] would need a babysitter for [her] daughter because her dad would be in jail and her mom would be in jail."
 {¶ 64} Despite appellant's claims, a review of Maureen's testimony at trial reveals that she did not in fact "stick" to her original statements. Instead, she testified in accordance with her theory that two women outside of Slam Jam's assaulted her. Thus, appellant has failed to show any prejudice to his substantial rights. This portion of appellant's fourth assignment of error is not well-taken.
 {¶ 65} Next, appellant contends that the prosecutor mischaracterized evidence by questioning Maureen on cross-examination in the following manner:
 {¶ 66} "Q. Now, this knee injury occurred at your house a couple days before [appellant] beat you up?
 {¶ 67} "A. He didn't beat me up."
 {¶ 68} Appellant argues that the prosecutor's statement "before [appellant] beat you up" demonstrates prosecutorial misconduct as a mischaracterization of the evidence which biased the jury.
 {¶ 69} It is not improper for a prosecutor to state the appropriate conclusions to be drawn from the evidence. State v.Kish, 11th Dist. No. 2001-L-014, 2002-Ohio-7130, at ¶ 52. Accordingly, a prosecutor may comment fairly on a witness' credibility based upon his or her in-court testimony. Id., citingState v. Keene, 81 Ohio St.3d 646, 1998-Ohio-342.
 {¶ 70} During Maureen's cross-examination, the prosecution set forth statements establishing that, despite her recantation, appellant had assaulted Maureen. Therefore, it cannot be said that the prosecution unfairly commented about non-existent evidence. This portion of appellant's fourth assignment of error is not well-taken.
 {¶ 71} Appellant further asserts that during the prosecutor's direct examination of Eve, he intentionally asked inflammatory and unduly prejudicial questions regarding Forbes House, a battered woman's shelter. Specifically, appellant cites to the following direct examination testimony of Eve:
 {¶ 72} "Q: Do you remember talking to [Maureen] about going to Forbes House at all?
 {¶ 73} "A: Yes, in fact she asked me to call Forbes House —
"[Defense Counsel]: Objection
"The Court: Sustained."
 {¶ 74} Thus, appellant concludes that such questioning was highly inflammatory and unduly prejudicial. However, the record fails to affirmatively disclose that Forbes House was a battered woman's shelter. As a result, any impact on the jury is speculative.
 {¶ 75} After reviewing the relevant portion of Eve's testimony, it is clear that the prosecution's line of questioning was neither particularly inflammatory nor unduly prejudicial. Again, appellant fails to support his argument with any analysis or authority as to why this line of questioning by the prosecution was inflammatory or unduly prejudicial. That being the case, appellant fails to establish a substantial right that was affected by the prosecution's question regarding Forbes House. Thus, this portion of appellant's fourth assignment of error is not well-taken.
 {¶ 76} Next, appellant argues that the prosecutor asked Eve several other improper questions. Appellant, however, again fails to set forth any reasoning or legal analysis to support these claims. App.R. 16(A)(7) provides that appellant shall include in its brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." See, also, Loc.R. 12(C)(4).
 {¶ 77} This court "may disregard an assignment of error presented for review" if the party raising it fails to comply with the above requirements. App.R. 12(A)(2). As part of his appellate brief, appellant's argument, in its entirety, states that "the prosecutor asked several improper questions of [Eve] that lead to answers which were inadmissible." Appellant then cites to numerous pages of the transcript. At no time does appellant support his argument with any contentions or legal analysis. Furthermore, it is less than clear which exact portions of the transcript represent the alleged prosecutorial misconduct.
 {¶ 78} Nevertheless, a brief review of the transcript pages cited to by appellant fails to reveal any prosecutorial misconduct. For this additional reason, this portion of appellant's fourth assignment of error is not well-taken.
 {¶ 79} Appellant also maintains that the prosecutor engaged in misconduct by coaching Ptlm. McMinn by inquiring as to events which might have occurred at Maureen's house, but were not included in his police report. When the prosecution asked this question, the trial court sustained appellant's initial objection and sustained appellant's second objection to a similar question.
 {¶ 80} We fail to see any prejudice, as the trial court sustained both objections. Thus, this portion of appellant's fourth assignment of error is not well-taken
 {¶ 81} Finally, appellant argues that prosecutorial misconduct occurred when the prosecutor stated that Maureen was "afraid of the guy" during closing arguments. Appellant submits that this statement invited the jury to speculate on facts not in evidence. Appellant further states that it is impermissible for a prosecutor to communicate his or her beliefs and opinions as to the guilt of the defendant.
 {¶ 82} An attorney should avoid expressing personal beliefs or opinions with respect to the guilt of the accused. State v.Lott (1990), 51 Ohio St.3d 160, 166. See, also, State v.Rahman (1986), 23 Ohio St.3d 146, 154. Nevertheless, prosecutors are granted wide latitude in closing arguments. Id. As mentioned previously, a prosecutor may comment upon the evidence in his closing argument and state the appropriate conclusions to be drawn there from. Kish at ¶ 52. Here, the prosecutor's statement was supported by Eve's testimony. It was also supported by Ptlm. Levicky's testimony. Thus, based upon other competent, credible evidence, the prosecutor's statement during closing arguments was neither improper nor was it prosecutorial misconduct. This portion of appellant's fourth assignment of error is not well-taken.
 {¶ 83} Based upon the foregoing analysis, the prosecutor did not engage in prosecutorial misconduct. Appellant's fourth assignment of error is without merit.
 {¶ 84} Under his fifth assignment of error, appellant argues that he was denied a fair trial because the jury witnessed him being transported and escorted by police through the courthouse. Appellant states that he was entitled to a physical indicia of innocence, and the jury viewing his police escort violated such right.
 {¶ 85} In support of his contention, appellant cites to case law supporting the proposition that a defendant, absent some essential state interest, shall not have restraints placed upon him in the presence of the jury. It is well-established that "[a] criminal defendant is generally entitled to appear in court without shackles, as the presumption of innocence may be undermined when the defendant is presented in restraints." Statev. Morgan (1992), 84 Ohio App.3d 229, 231. See, also, State v.Brandle (1996), 116 Ohio App.3d 753, 755-756. However, in some circumstances, restraints are necessary for the safe, reasonable, and orderly progress of the trial. Morgan at 232. The decision to shackle a defendant lies in the sound discretion of the trial court. Brandle at 756.
 {¶ 86} As an initial matter, we note that appellant has failed to provide evidence that he was restrained in any manner while in view of the jury. During his sentencing hearing, Maureen stated, "[t]he jury members saw [appellant] getting in and out of the sheriff cars downstairs." Appellant's transport and escort by the police is hardly a shocking or unnecessary fact, unless there is some evidence of shackles. There is none. Appellant's fifth assignment of error is without merit.
 {¶ 87} Appellant's second assignment of error sets forth an extensive list of alleged instances of ineffective assistance of counsel. Based upon these contentions, appellant claims his right to due process has been violated.
 {¶ 88} Both the Supreme Court of Ohio and this court have adopted the following two-pronged test articulated in Stricklandv. Washington (1984), 466 U.S. 668, to determine whether an accused has received ineffective assistance of counsel:
 {¶ 89} "First, a defendant must be able to show that his trial counsel was deficient in some aspect of his representation. * * * This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the `counsel' guaranteed by both the United States and Ohio Constitutions. * * *
 {¶ 90} "Second, a defendant must show that the deficient performance prejudiced his defense. * * * This requires a showing that there is `a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' * * * `A reasonable probability is a probability sufficient to undermine confidence in the outcome.' * * *" (Citations omitted.) State v. Swick, 11th Dist. No. 97-L-254, 2001-Ohio-8831, 2001 Ohio App. LEXIS 5857, at 4-5. See, also,State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 91} On the issue of counsel's ineffectiveness, the defendant bears the burden of proof because, in Ohio, every properly licensed attorney is presumed to be competent. State v.Smith (1985), 17 Ohio St.3d 98, 100. To overcome this presumption, the defendant must demonstrate that "the actions of his attorney did not fall within a range of reasonable assistance." State v. Henderson (Sept. 29, 2000), 4th Dist. No. 99-T-0001, 2000 Ohio App. LEXIS 4579, at 22.
 {¶ 92} A threshold issue is whether there was actual error on the part of appellant's defense counsel. Without error, defense counsel's actions cannot be said to be deficient. Appellant cites to the following instances as evidence of ineffective assistance of counsel: (1) the failure to object to appellant's transport and escort by police in front of jurors; (2) the failure to object to an all-white jury; and (3) the failure to object to instances of prosecutorial misconduct. Our previous holdings in assignments of error one, four, and five have determined that there was no error regarding the above claimed instances of ineffective assistance. As a result, defense counsel was not deficient by failing to object to appellant's transport and escort by police, the jury selection process, or prosecutorial misconduct. This portion of appellant's second assignment of error is not well-taken.
 {¶ 93} Next, appellant contends that he received ineffective assistance due to defense counsel prohibiting him from testifying. In support of his contention, appellant cites to a statement he made during sentencing, to wit, "I wanted to speak at my trial but [defense counsel] advised me not to and I didn't care, I wanted to speak." (Emphasis added.)
 {¶ 94} A sound principle of our judicial system is that "a criminal defendant's decision to testify is ultimately his or her decision, not that of defense counsel." State v. James (Nov. 24, 1998), 10th Dist. No. 98AP-327, 1998 Ohio App. LEXIS 5655, at 11. "When, however, a defendant acquiesces in counsel's decision not to testify at trial, a defendant cannot later assert that his right to testify at trial has been violated." State v. Ashley
(June 14, 2000), 4th Dist. No. 99 CA 2514, 2000 Ohio App. LEXIS 2724, at 15-16.
 {¶ 95} In the case at bar, there is no evidence that defense counsel prohibited appellant from testifying on his own behalf. Also, there is no evidence that appellant himself ever raised this issue with the court during trial. Evidence outside the record would be required to demonstrate appellant's claim. Appellant cannot base his claim of ineffective assistance of counsel upon his acquiescence to defense counsel's advice to not testify. This portion of appellant's second assignment of error is not well-taken.
 {¶ 96} Appellant also maintains that he received ineffective assistance due to defense counsel's failure to investigate and assert his medical condition as a defense. Specifically, appellant claims that defense counsel failed to provide evidence showing that he suffered from debilitating injuries at the time of Maureen's assault, which would have precluded him from physically beating her.
 {¶ 97} During Maureen's cross-examination by defense counsel, numerous questions were asked regarding appellant's health at the time of the assault. Maureen testified that when the assault occurred appellant was suffering from an injured knee and back. She described the severity of these injuries and various medical procedures appellant had allegedly undergone just prior to the assault. The record clearly demonstrates that counsel investigated appellant's medical condition and presented evidence in relation thereto. There is no evidence of record corroborating appellant's claim that counsel failed to investigate or assert appellant's alleged medical condition. Thus, this portion of appellant's second assignment of error is not well-taken.
 {¶ 98} Appellant further argues that his defense counsel failed to investigate possible alternative perpetrators of the assault. Again, the record fails to show that defense counsel neglected to investigate additional suspects. To the contrary, counsel elicited testimony from Maureen regarding her theory that two unknown females assaulted her on the night of January 26, 2002. Furthermore, Maureen testified that, because she was intoxicated, she could not remember being assaulted. Therefore, the record again fails to demonstrate that counsel failed to investigate possible alternative perpetrators of the crime. Accordingly, this portion of appellant's second assignment of error is not well-taken.
 {¶ 99} Next, appellant argues that defense counsel erred in failing to object and request a mistrial when an alternate juror stated in open court, and in the presence of the jury, that she knew Eve from church. Appellant contends that such a statement biased the jury because it was impossible for the jury to not believe a witness that was a church member.
 {¶ 100} A review of the record before us reveals that, at the beginning of Eve's testimony, the alternate juror stated the following in open court and in the presence of the jury:
 {¶ 101} "Alternate Juror: Your Honor, I believe I am acquainted with the witness.
 {¶ 102} "The Court: All right. Why don't we — how do you know the witness?
 {¶ 103} "Alternate Juror: I used to attend church with her, I haven't seen her probably for, maybe, five or six years. I wasn't sure who she was until she said she was a cook, and she was a cook at our day care.
 {¶ 104} We agree with appellant that a juror's acknowledgment that they knew a witness might warrant a challenge from counsel. However, Eve's testimony with respect to Maureen's statement that appellant had beaten her was also established by the testimony of Dr. Mandac. Furthermore, Dr. Mandac's testimony, in conjunction with admitted photographs of Maureen's injuries and those portions of the admitted medical report detailing the severity of her injuries, established that Maureen's injuries resulted from a beating over a significant duration of time. Such evidence contradicted Maureen's testimony that she was attacked by two unknown women outside of Slam Jam's. Further, Maureen's testimony basically was that she did not remember her conversation with Eve on the morning of the assault. Therefore, there was no resulting prejudice. Any error on the part of counsel to object was harmless, as it is clear that trial's result would not have been different had defense counsel objected. This portion of appellant's second assignment of error is not well-taken.
 {¶ 105} Appellant submits that his due process rights were violated due to ineffective assistance of counsel when defense counsel failed to object to various instances of hearsay testimony. Specifically, appellant cites to three separate instances in which Ptlm. McMinn and Sgt. Mercsak testified as to statements made by appellant.
 {¶ 106} As mentioned previously, any error relating to Sgt. Mercsak's testimony was harmless. Therefore, any error on the part of defense counsel in failing to object to Sgt. Mercsak's testimony is also rendered harmless.
 {¶ 107} Likewise, even if appellant could demonstrate that Ptlm. McMinn's testimony was inadmissible hearsay, the cumulative testimony of Eve and Dr. Mandac, along with the admission of the medical report and photographs, established that appellant assaulted Maureen. Thus, any possible error would be harmless. This portion of appellant's second assignment of error is not well-taken.
 {¶ 108} Appellant also argues that defense counsel's assistance was rendered ineffective due to his failure to object to the admission of Maureen's medical records which stated appellant had assaulted her and that Forbes House became involved with the case.
 {¶ 109} Again, the medical record again simply provided cumulative evidence that restated the testimony of Eve and Dr. Mandac. Thus, appellant failed to establish that defense counsel's failure to object would have resulted in prejudice and a deficiency on the part of defense counsel. This portion of appellant's second assignment of error is not well-taken.
 {¶ 110} Next, appellant asserts that defense counsel failed to provide him with a defense. The basis of his contention is that defense counsel only called Maureen as a witness.
 {¶ 111} It is well-established under Ohio law that even a questionable trial strategy does not compel a finding of ineffective assistance of counsel. State v. Smith (2000),89 Ohio St.3d 323, 328; State v. Clayton (1980), 62 Ohio St.2d 45. "[R]eviewing courts must not use hindsight to second-guess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners." State v.Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639, at ¶ 88. Accordingly, errors of judgment regarding tactical matters do not substantiate a defendant's claim of ineffective assistance of counsel. State v. Phillips, 74 Ohio St.3d 72, 85, 1995-Ohio-91.
 {¶ 112} In general, the decision to call a witness is left to the sound discretion of defense counsel and falls within the ambit of trial strategy and tactics. See, e.g., State v.Nicholas (Dec. 23, 1999), 11th Dist. No. 98-P-0061, 1999 Ohio App. LEXIS 6265, at 10. In this case, the fact that defense counsel presented only one witness relates to sound trial strategy. Maureen's cross-examination testimony as the court's witness provided substantial evidence supporting appellant's defense. The record suggests no other obvious defense witnesses. Although Maureen stated that she had been told two women had assaulted her, she did not recall these events. Furthermore, defense counsel's cross-examination of all witnesses was vigorous and competent. Thus, defense counsel's actions did not constitute ineffective assistance.
 {¶ 113} Finally, appellant argues that he received ineffective assistance as a result of defense counsel's failure to move for acquittal, pursuant to Crim.R. 29. We disagree.
 {¶ 114} Generally, counsel's failure to make a Crim.R. 29 motion does not constitute ineffective assistance of counsel when the prosecution's case-in-chief links the defendant to the crimes of which he or she is accused. State v. Beesler, 11th Dist. No. 2002-A-0001, 2003-Ohio-2815, at ¶ 17. In the instant case, the prosecution's casein-chief linked appellant to Maureen's assault.
 {¶ 115} As will be discussed more fully under appellant's seventh assignment of error, the prosecution provided sufficient evidence to sustain a conviction. In doing so, the prosecution presented voluminous testimony satisfying the elements of each charge. Because the motion for acquittal would have been denied due to the state presenting adequate evidence to sustain the verdict, any error in failing to raise such a motion did not result in any prejudice. Also, it is not apparent from the record who else could have been called for the defense. Thus, this portion of appellant's second assignment of error is not well-taken.
 {¶ 116} Based upon the foregoing analysis, representation by appellant's counsel was not ineffective. Appellant's second assignment of error is without merit.
 {¶ 117} Under his seventh assignment of error, appellant maintains that the jury's guilty verdict was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 118} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin
(1983), 20 Ohio App.3d 172, 175. See, also, State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 119} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 120} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."State v. Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 3. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 121} Here, to resolve conflicting testimony, the jury was required to determine the credibility of each witness. The jury was in the best position to view the witnesses and determine their credibility. Obviously, the jury did not find Maureen's rather incredible testimony of a drug/alcohol induced blackout, assault by unknown assailants, and her subsequent recantation to be credible. On the other hand, the prosecution presented a substantial amount of consistent testimony from Eve, Ptlm. Levicky, and Dr. Mandac which established that appellant had assaulted Maureen and subsequently broke into her house and threatened her. The jury is not required to believe the unbelievable, even when it is the victim's testimony.
 {¶ 122} Furthermore, there is nothing to suggest that the testimony of the prosecution's witnesses was incredible or absurd. Each witness testified in an almost identical fashion as to the events which resulted in appellant's conviction. Accordingly, this court will not disturb the jury's credibility findings on appeal, as the credibility of each witness was a critical issue for the trier of fact to determine. State v.Ready (2001), 143 Ohio App.3d 748. This portion of appellant's seventh assignment of error is not well-taken.
 {¶ 123} When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average trier of fact of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 124} To convict appellant of felonious assault, the prosecution was required to prove that he knowingly caused physical harm to another. R.C. 2903.11(A)(1). As mentioned previously, there was an extensive amount of testimony given which substantiated appellant's felonious assault conviction. Specifically, the evidence demonstrated that appellant knowingly beat Maureen over a span of several hours on the morning of January 26, 2002. Namely, the testimony of Dr. Mandac confirmed that the injuries incurred were severe and were comparable to injuries that would be inflicted over an extended length of time.
 {¶ 125} To convict appellant of aggravated burglary, the prosecution was required to demonstrate that appellant trespassed, by force, upon Maureen's property, to threaten to inflict physical harm. R.C. 2911.01(A)(1). Reviewing the testimony in a light most favorable to the prosecution confirms that appellant entered Maureen's house forcefully by breaking through her front door. Specifically, Ptlm. Levicky testified that Maureen had informed him that appellant had pushed open the door. Appellant's forcible entry was further corroborated by Eve's testimony that she visited Maureen on the day after the break-in and saw that Maureen's door frame had been broken. Ptlm. Levicky's testimony also demonstrated that, once inside, appellant threatened Maureen with physical harm.
 {¶ 126} Finally, to convict appellant of threatening a victim in a criminal case, the prosecution was required to demonstrate that appellant knowingly threatened Maureen with physical harm in an attempt to hinder the prosecution of his criminal charges. R.C. 2921.04(B). Again, Ptlm. Levicky gave testimony that after appellant had broken into Maureen's house and threatened her with physical harm, he ordered Maureen to drop the assault charges.
 {¶ 127} Based upon the foregoing analysis, the jury's verdict was neither against the manifest weight nor the sufficiency of the evidence. Appellant's seventh assignment of error is without merit.
 {¶ 128} Under his sixth assignment of error, appellant argues that the trial court improperly considered his lack of remorse, and failed to consider appellant's claim of innocence and other evidence presented on his behalf regarding his sentence. Moreover, appellant contends that Maureen's assertion of his innocence overcomes a presumption of a prison term under R.C.2929.12.
 {¶ 129} As mentioned previously, the trial court sentenced appellant to seven years of incarceration for felonious assault, seven years of incarceration for aggravated burglary, and three years of incarceration for intimidation of a victim in a criminal case. Each sentence was to be served concurrently, but consecutively to appellant's prior federal prison term of incarceration.
 {¶ 130} A reviewing court will not reverse a sentence unless the appellant establishes that the trial court failed to comply with the applicable statutory requirements or that it abused its discretion by failing to consider sentencing factors. State v.Rupert, 11th Dist. No. 2001-L-169, 2002-Ohio-7268, at ¶ 5. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 131} Under R.C. 2929.11, the purposes of criminal sentencing are to punish the offender and to protect the public from future crime. To ensure that the sentence imposed is consistent with these purposes, a trial court must consider such things as the seriousness of the offender's conduct, the offender's criminal record, and the circumstances under which the crime was committed. R.C. 2929.12. The trial court is granted broad discretion in determining the most effective way to uphold the sentencing objectives when sentencing a defendant. Id.
 {¶ 132} First, appellant contends that the trial court improperly considered his lack of remorse. However, pursuant to R.C. 2929.12(D)(5), the trial court may consider a defendant's lack of remorse as an indication of the likelihood that he or she will commit future crimes. See, e.g., State v. Tennyson, 11th Dist. No. 98-L-219, 2001-Ohio-8814. As a result, the trial court did not abuse its discretion by considering appellant to be lacking general remorse for his crimes.
 {¶ 133} Next, appellant argues that the trial court failed to consider evidence of his innocence. Namely, appellant maintains that the court failed to consider Maureen's testimony during trial and statements made at the sentencing hearing. This simply is not true. The trial court stated during the sentencing hearing that it had considered appellant's and Maureen's comments regarding his innocence. Nevertheless, the trial court noted that the jury had weighed the evidence and credibility of the witnesses and found appellant guilty. The court further stated that the prosecution had presented extensive evidence demonstrating his guilt. Clearly, the court considered appellant's claim of innocence, but ultimately, within its broad discretion, it found that such claims did not overcome the presumption for a term of incarceration. Thus, the trial court properly sentenced appellant according to the purposes of R.C.2929.11.
 {¶ 134} Appellant further argues that during the sentencing hearing the trial court failed to consider the testimony of his landlord who vouched for his good character. Generally, a sentencing court need not provide its reasoning for imposing more than the minimum prison term. See, e.g., State v. Boczek, 11th Dist. No. 2001-L-193, 2002-Ohio-6924. "However, when imposing a prison term for a felony of the fourth or fifth degree, R.C.2929.19(B)(2)(a) provides that a trial court must state its reasons for selecting the sentence, which is to be based upon the overriding purposes and principles of felony sentencing." Id.
 {¶ 135} Here, all three counts were felonies of either the first, second, or third degree. Thus, the trial court was not required to include a recitation of the landlord's testimony to demonstrate that it considered his statements during sentencing. Again, the trial court did not abuse its discretion.
 {¶ 136} Finally, appellant submits that the trial court erred in issuing a consecutive term of incarceration to his federal prison term. When imposing consecutive sentences, the trial court must first determine that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C. 2929.14(E)(4). Next, the trial court must find that one of the following factors listed in R.C. 2929.14(E)(4) is also present: (a) that the offender was awaiting trial or sentencing or was under community control sanctions; (b) that the harm caused by the offenses was so great that a single prison term would not adequately reflect the severity of the conduct; or (c) that the offender's prior criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. State v.Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 WL 635951, at 4.
 {¶ 137} The court must also follow the requirements set forth in R.C. 2929.19(B) when sentencing an offender to consecutive sentences under R.C. 2929.14. Specifically, R.C. 2929.19(B)(2)(c) requires that the trial court justify its imposition of consecutive sentences by making findings that give the court's reasons for selecting that particular sentence.
 {¶ 138} In the past, this court has held that the findings mandated by R.C. 2929.19(B)(2)(c) and 2929.14 "must appear somewhere on the record of sentence, either in the judgment or in the transcript of the sentencing hearing." State v. Rone (Dec. 4, 1998), 11th Dist. No. 98-A-0001, 1998 Ohio App. LEXIS 5813, at 6. See, also, State v. Hoskins (Mar. 16, 2001), 11th Dist. No. 2000-A-0037, 2001 Ohio App. LEXIS 1232. Recently, however, the Supreme Court of Ohio held that when ordering a defendant to serve consecutive sentences, the trial court must also make its statutorily required findings at the sentencing hearing. Statev. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, paragraphs one and two of the syllabus.
 {¶ 139} After careful examination of the transcript of the sentencing hearing and judgment entry, we find that the trial court adequately addressed the statutory factors of R.C.2929.14(E)(4) and provided its findings for the consecutive sentence as required by R.C. 2929.19(B)(2)(c). Specifically, the trial court stated at the sentencing hearing and in its judgment entry that appellant's actions were a "brutal act of rage" which were "sustained over a long period of time." Evidence of the brutality of appellant's assault was confirmed by photographs depicting Maureen's badly bruised body. The trial court further stated that appellant compounded his violent actions by breaking into Maureen's home where she lived with her child and "terrorizing" her with threats in an attempt to have the charges against him dismissed. Thus, the trial court found that consecutive sentences were necessary to protect the public from future harm and were not disproportionate to the seriousness of appellant's actions, as the harm caused by the offenses was so great that a single prison term would not adequately reflect the severity of the conduct.
 {¶ 140} The trial court properly considered the factors of R.C. 2929.14(E)(4) and stated its reasoning for issuing a consecutive sentence at the sentencing hearing and in its judgment entry. As a result, appellant's sixth assignment of error is without merit.
 {¶ 141} Based upon the foregoing analysis, appellant's seven assignments of error are without merit. Appellant's conviction and sentence are hereby affirmed.
Grendell, J., concurs, Ford, P.J., concurs in judgment only.