[Cite as *State v. Tenney*, 2019-Ohio-927.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-T-0019** |
| MICHAEL RUSSELL TENNEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2017 CR 159.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, *Gabriel M. Wildman*, Assistant Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Stephen A. Turner*, Turner, May & Shepherd, 185 High Street, N.E., Warren, OH 44481 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Michael Russell Tenney, appeals his convictions for felonious assault and two counts of endangering children following a jury trial in the Trumbull County Court of Common Pleas. After a careful review of the record and pertinent law, we affirm.

**Substantive History and Procedural Background**

{¶2} K.T. and his 20-month old brother were visiting their grandfather, Mr. Tenney, at his home in Champion Township. K.T. and his brother were playing. At some point, Mr. Tenney became angry and sent K.T. to his room. Mr. Tenney then grabbed K.T.'s arm with two hands and yanked it hard.

{¶3} Following the incident, Mr. Tenney contacted K.T.'s father, Zach Tenney, who arrived shortly thereafter. Zach Tenney then called K.T.'s mother, Kristin Starkey, who is an EMT. She requested K.T. be taken to Trumbull Memorial Hospital.

{¶4} Ms. Starkey met K.T. and Zach Tenney in the waiting room of the emergency department. K.T. initially told her he had accidentally jumped off the couch. Upon viewing K.T.'s arm, she immediately obtained medical assistance for him.

{¶5} Dr. Mark Swift, medical director of the emergency department at Trumbull Memorial Hospital, examined K.T. The x-rays showed K.T. experienced a supracondylar fracture, or a fracture at the elbow. The bones were completely displaced, resulting in a Grade 3 fracture, which is the most severe. Based on the extent of the injury, Dr. Swift did not believe K.T. jumped off the couch. As a mandatory reporter under the law, Dr. Swift directed his nurse to contact children services and the police for suspected child abuse.

{¶6} Sergeant Michael Platt of the Trumbull County Sheriff's Department was dispatched to Trumbull Memorial Hospital as a result of the hospital's report. Sergeant Platt spoke with K.T., who initially claimed he fell off the couch. During further conversation, K.T. told Sergeant Platt that Mr. Tenney had hurt his arm by "pulling on it too hard." K.T. further told Sergeant Platt that Mr. Tenney had instructed him to say he fell off the couch so Mr. Tenney would not get in trouble.

2

{¶7} Due to the severity of the fracture, K.T. was transferred to Akron Children's Hospital. Shannon Smith, a licensed social worker at the hospital, interviewed K.T. He initially told her he injured his arm after jumping off the couch. During further conversation, however, K.T. told her Mr. Tenney "yanked" his arm because Mr. Tenney thought K.T. had hit his little brother.

{¶8} K.T. underwent surgery at Akron Children's Hospital and received three pins in his elbow.

{¶9} Toni Thompson, a former investigator at the Trumbull County Children's Services, interviewed K.T. at the Child Advocacy Center in Boardman, Ohio. Patrolman Daniel Wasko, Jr., of the Champion Police Department was also present and watched through a one-way mirror. Throughout the interview, K.T. indicated that Mr. Tenney had pulled his arm too hard.

{¶10} Following a medical exam, Ms. Thompson prepared a report that was presented to the Child Assault Prosecution Team, which is comprised of law enforcement, children services, special counselors, and Trumbull County prosecutors.

{¶11} On March 8, 2017, the Trumbull County Grand Jury indicted Mr. Tenney on (1) felonious assault, a second degree felony, in violation of R.C. 2903.11(A)(1) and (D)(1)(A), (2) endangering children, a third degree felony, in violation of R.C. 2919.22(A) and (E)(2)(C), and (3) endangering children, a second degree felony, in violation of R.C. 2919.22(B)(3) and (E)(3). Mr. Tenney pleaded not guilty and was held without bond.

{¶12} The state and Mr. Tenney's initial trial counsel filed a joint stipulation for use of a polygraph examination to be conducted at a later date. It was agreed that the polygraph would be admissible unless the results were "inconclusive." The examination

3

was conducted on April 30, 2017, and the August 29, 2017 report noted "physiological changes indicative of deception."

{¶13} At a subsequent pretrial hearing, the state placed a plea offer on the record recommending a two-year prison sentence in exchange for a guilty plea to the indictment. Mr. Tenney's trial counsel told the trial court Mr. Tenney rejected the offer.

{¶14} The trial court then informed Mr. Tenney that if the jury were to convict him at trial, the sentencing range was two to eight years in prison. In response, Mr. Tenney stated, "My attorney has advised me not to, not to take the plea." The trial court engaged Mr. Tenney in the following colloquy:

{¶15} "[MR. TENNEY]: I don't feel I should plead guilty for something I didn't do.

{¶16} "[TRIAL COURT]: Well, I'm not telling you to do that. I just want to make sure that you understand the offer that was expressed to you, and that you know what you're rejecting so you know what you're giving up.

{¶17} "[MR. TENNEY]: I understand that."

{¶18} The trial court gave Mr. Tenney and his trial counsel additional time to discuss the plea offer regarding a separate probation violation. Subsequently, the following exchange occurred:

{¶19} "[TRIAL COUNSEL]: Thank you, Your Honor, for giving me a few minutes to inquire with my client. He maintains his innocence and wants to proceed to trial.

{¶20} "* * *

{¶21} "[TRIAL COURT]: Mr. Tenney, you understand as of today, that offer from the state to give you two-year [sic], your minimum sentence plus the sentence of probation violation is current [sic], that's gone after today?

{¶22} "[MR. TENNEY]: I understand."

4

{¶23} The case proceeded to a jury trial.

***The State's Case***

{¶24} K.T. testified that Mr. Tenney "grabbed" his arm with "two hands" and "yanked it hard." K.T. denied falling from Mr. Tenney's sofa or love seat.

{¶25} K.T.'s mother, Ms. Starkey, testified she had previously asked Zach Tenney to refrain from leaving K.T. alone with Mr. Tenney because of an alleged drinking and driving incident in which K.T. was present. She further testified Mr. Tenney was known to be an alcoholic with a violent past. She denied having any involvement in K.T.'s implication of Mr. Tenney as the cause of the injury.

{¶26} The state also presented testimony from Dr. Swift regarding his examination and interaction with K.T., as well as from Sergeant Platt, Shannon Smith, Toni Thompson, and Patrolman Wasko regarding their interviews with K.T.

{¶27} William Evans, II of PolyTech Incorporated testified regarding his administration of a stipulated polygraph test on Mr. Tenney. Mr. Evans concluded Mr. Tenney showed deception regarding whether he caused K.T.'s injury and the amount of alcohol he had consumed on the day of the incident.

{¶28} The state presented expert medical testimony from Dr. Emma Raizman. Dr. Raizman was employed as a child abuse pediatrician at Akron Children's Hospital at the time of the incident. Dr. Raizman testified that in accidental fractures, the bones are not typically totally displaced. A Grade 3 fully displaced fracture, like K.T.'s, would require a significant amount of force. Based on her review of the medical evidence, Dr. Raizman concluded that, to a reasonable degree of medical and scientific certainty, K.T.'s injury was the result of child abuse. Dr. Raizman also testified it is common in child abuse

5

cases for a victim to change his or her initial story about what happened once he or she becomes comfortable with the interviewer.

{¶29} After the state rested, Mr. Tenney moved the court for a directed verdict pursuant to Crim.R. 29, arguing the state had failed to present sufficient evidence of the required mens rea for the two counts of endangering children. The trial court overruled the motion.

### *The Defense's Case*

{¶30} In his defense, Mr. Tenney presented four witnesses and testified on his own behalf.

{¶31} Kathy Lapmarado, a dispatcher at Trumbull County 911 Center, testified that on the day of the incident, she received a call reporting the incident that also stated Mr. Tenney and Zach Tenney had domestic violence histories. At some point, a nurse called back and advised that the victim was in the ER at the time. Ms. Lapmarado noted that this information was provided to Sergeant Platt.

{¶32} K.T.'s father, Zach Tenney, testified regarding his various visits to Mr. Tenney's residence on the day of the incident. He indicated he saw no sign Mr. Tenney was intoxicated on that day.

{¶33} Dr. William Edward Hauda, II testified as an expert medical witness on Mr. Tenney's behalf. Dr. Hauda testified that supracondylar fractures are very common in children. He indicated K.T.'s type of injury could not have occurred from someone yanking on K.T.'s arm. Based on his review of the medical evidence, Dr. Hauda concluded that, to a reasonable degree of medical certainty, a fall caused K.T.'s injury.

{¶34} John Lutseck, Mr. Tenney's former trial counsel, testified regarding the polygraph test. He stated that following the exam, Mr. Evans informed him the results were inconclusive.

{¶35} Finally, Mr. Tenney testified on his own behalf. He denied fracturing K.T.'s arm and maintained an accidental fall caused K.T.'s injury. According to Mr. Tenney, K.T. and his brother were playing on the love seat in the living room. At some point, K.T. was "perched" on the arm of the love seat. After briefly attending to K.T.'s brother, Mr. Tenney turned around and observed K.T. on the floor with a severely swollen arm. On cross-examination, Mr. Tenney admitted to drinking at least six beers on the day of the incident.

{¶36} Following deliberations, the jury found Mr. Tenney guilty on all three counts charged in the indictment. The state indicated the three counts would merge for purposes of sentencing and elected to proceed on Count 1.

{¶37} At the sentencing hearing, the trial court imposed a prison term of eight years plus an additional 18 months for a probation violation, to be served consecutively, for an aggregate prison term of 9 and one-half years.

{¶38} Mr. Tenney now appeals, asserting the following five assignments of error:

{¶39} "[1.] The appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution.

{¶40} "[2.] The state failed to produce evidence that was legally sufficient to sustain the jury's verdict that appellant endangered a child.

{¶41} "[3.] The jury's verdict of guilty on the [sic] count one of felonious assault was against the manifest weight of the evidence.

{¶42} "[4.] The jury's verdict of guilty on the [sic] count two of child endangering was against the manifest weight of the evidence.

7

**{¶43}** "[5.] The jury's verdict of guilty on the [sic] count three of child endangering was against the manifest weight of the evidence."

## Law and Analysis

### *Ineffective Assistance of Counsel*

**{¶44}** In his first assignment of error, Mr. Tenney claims he received ineffective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution. Specifically, Mr. Tenney argues his trial counsel was ineffective when she advised him to reject a "very favorable" plea deal of a "guaranteed" two years in prison in exchange for a guilty plea to all counts in the indictment.

**{¶45}** To establish a claim of ineffective assistance of counsel, Mr. Tenney must demonstrate that (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the proceedings would have been different. *State v. Kouns*, 11th Dist. Portage No. 2011-P-0105, 2012-Ohio-5331, ¶33, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

**{¶46}** A threshold issue in a claim of ineffective assistance of counsel is whether there was actual error on the part of trial counsel. *Id.* at ¶34, citing *State v. McCaleb*, 11th Dist. Lake No. 2002-L-157, 2004-Ohio-5940, ¶92. In Ohio, every properly licensed attorney is presumed to be competent, and therefore a defendant bears the burden of proof. *Id.*, citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). "Counsel's performance will not be deemed ineffective unless and until the performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *Id.*, quoting *State v. Iacona*, 93 Ohio St.3d 83, 105 (2001).

8

**{¶47}** The Supreme Court of the United States has recognized criminal defendants are entitled to the effective assistance of counsel during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). To satisfy the prejudice requirement in such circumstances, "a defendant must show [1] that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164; *State v. Knapp*, 11th Dist. Ashtabula No. 2012-A-0035, 2013-Ohio-870, ¶56.

**{¶48}** Mr. Tenney cites *Lafler*, *supra*, in support of his argument. In that case, the defendant was charged with assault with intent to murder and other charges. *Id.* at 161. The prosecution offered a plea agreement to a defendant in which the state would dismiss two charges and recommend a sentence of 51 to 85 months for two other charges in exchange for a guilty plea. *Id.* In communication with the court, the defendant admitted guilt and expressed a willingness to accept the offer. *Id.* The defendant later rejected the offer after his attorney convinced him, apparently based on an error of law, that the prosecution would be unable to establish his intent to murder the victim. *Id.* After trial, the defendant was convicted on all counts and received a mandatory minimum sentence of 185 to 360 months in prison. *Id.*

**{¶49}** Mr. Tenney argues the elements under *Lafler* are satisfied because (1) his trial counsel was ineffective when she advised him to reject the two-year plea deal "despite the significant adverse evidence and circumstances facing" him, (2) the trial

9

court's characterization of the sentence as "guaranteed" presumed that the trial court would have accepted it and sentenced Mr. Tenney accordingly, and (3) Mr. Tenney was prejudiced since he received a prison term of 9 and one-half years as opposed to two years.

{¶50} Mr. Tenney's reliance on *Lafler* is misplaced. In *Lafler*, the parties stipulated trial counsel's performance was deficient. *Id.* at 166, 174. That is obviously not the case here.

{¶51} In any event, unlike in *Lafler*, the record indicates Mr. Tenney's rejections of the plea offer were not solely based on the advice of his trial counsel. Mr. Tenney never admitted guilt nor expressed a willingness to accept the plea offer. Instead, Mr. Tenney rejected the offer multiple times on the record. He continued to maintain his innocence following conviction, stating to the trial court at the sentencing hearing, "I say I'm innocent. I never would have hurt my grandson, never."

{¶52} Even if Mr. Tenney's rejections of the plea offer were solely based on his trial counsel's advice, he has not established such advice was deficient. Unlike in *Lafler*, Mr. Tenney has not alleged his trial counsel's advice was based on an error of law. Instead, Mr. Tenney claims "[t]here is no indication from the record" his trial counsel discussed the "serious, negative impacts" of the polygraph results and Mr. Tenney's prior criminal history. He further claims trial counsel "may not have been entirely clear on the terms of the proposed plea deal or all the attendant circumstances."

{¶53} Mr. Tenney, however, misstates the applicable burden of proof. It is his obligation to overcome the presumption of his trial counsel's competence. *See Kouns, supra*, at ¶34. Mere speculation is insufficient to establish ineffective assistance of counsel. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, ¶119.

10

**{¶54}** Since Mr. Tenney has failed to establish his trial counsel's performance was deficient, his first assignment of error is without merit.

### *Sufficiency of the Evidence – Child Endangering*

**{¶55}** In his second assignment of error, Mr. Tenney claims the state failed to produce sufficient evidence to sustain his convictions on two counts of child endangering. Specifically, Mr. Tenney argues the state "made no effort" to put forth evidence that Mr. Tenney acted "recklessly."

**{¶56}** "When reviewing a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Muncy*, 11th Dist. Ashtabula No. 2011-A-0066, 2012-Ohio-2830, ¶12, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The pertinent inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *Jenks* at paragraph two of the syllabus.

**{¶57}** A sufficiency challenge requires this court to review the record to determine whether the state presented evidence on each of the elements of the offense. *Id.* at ¶13. This test involves a question of law and does not permit us to weigh the evidence. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶58}** The jury convicted Mr. Tenney of one count of child endangering pursuant to R.C. 2919.22(A) and a second count pursuant to R.C. 2919.22(B)(3).

**{¶59}** R.C. 2919.22(A) states: "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen

11

years of age * * *, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."

**{¶60}** R.C. 2919.22(B)(3) states: "No person shall do any of the following to a child under eighteen years of age * * *: Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child[.]"

**{¶61}** Under both statutes, recklessness is the required culpable mental state. *See State v. McGee*, 79 Ohio St.3d 193, 195 (1997) (construing R.C. 2919.22(A)); *See State v. O'Brien*, 30 Ohio St.3d 122, 124 (1987) (construing R.C. 2919.22(B)(3)).

**{¶62}** "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

**{¶63}** According to Mr. Tenney, the state's case was limited to establishing that his actions were intentional rather than reckless. We disagree.

**{¶64}** The state produced evidence that (1) Mr. Tenney was babysitting his grandson, K.T., and K.T.'s 20-month old brother, at his residence, (2) Mr. Tenney consumed several beers on the date of the incident, and (3) Mr. Tenney became angry at K.T., grabbed his arm, and yanked it twice. Based on these facts, a trier of fact could reasonably conclude Mr. Tenney had acted "recklessly."

**{¶65}** Further, even if the evidence only established Mr. Tenney acted intentionally, his argument would be without merit. R.C. 2901.22(E) specifically provides

12

"[w]hen recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element."

{¶66} After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found recklessness proven beyond a reasonable doubt. Mr. Tenney's second assignment of error is without merit.

### *Manifest Weight of the Evidence – All Convictions*

{¶67} In his third, fourth, and fifth assignments of error, Mr. Tenney claims the jury's verdicts of guilty on felonious assault and on two counts of child endangering were against the manifest weight of the evidence. In his brief, Mr. Tenney discussed these assignments of error together; therefore, we will address them together.

{¶68} "Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Muncy*, 11th Dist. Ashtabula No. 2011-A-0066, 2012-Ohio-2830, ¶21, quoting *State v. Higgins*, 11th Dist. Lake No. 2005-L-215, 2006-Ohio-5372, ¶35, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶69} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Griffith*, 11th Dist. Portage No. 2008-P-0089, 2010-Ohio-821, ¶35.

{¶70} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *Muncy* at ¶23, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. When examining witness credibility,

13

"the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *Id.*, quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶58.

{¶71} "When reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. * * * This presumption arises because the [jury] had an opportunity to view the witnesses and observe their demeanor in weighing the credibility of the witnesses." *Id.* at ¶59, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 79–81 (1984).

{¶72} Mr. Tenney argues the "overwhelming weight of the evidence supports the determination that [K.T.'s] injury was the result of a fall and not his grandfather." Specifically, he cites the following evidence: (1) K.T.'s problems with differentiating fantasy and reality, (2) K.T.'s vacillating statements regarding the cause of his injury, (3) the state's medical professionals relied on statements of others in concluding Mr. Tenney had abused K.T., and (4) the state's medical professionals agreed K.T.'s injury could have been caused by a fall.

{¶73} Mr. Tenney has simply cited the evidence in his favor. Most of the evidence in the record is not favorable to Mr. Tenney. Notably, K.T., the 5-year-old victim in this case, told several people following the incident that Mr. Tenney broke his arm, including a sheriff's deputy, a licensed social worker, and a children service's investigator. His story remained the same over a year later when he testified at trial.

{¶74} The state's medical professionals testified that K.T.'s severe, Grade 3 displaced fracture was more likely caused by significant force consistent with child abuse rather than a fall from a couch.

{¶75} Mr. Tenney took a polygraph, and the results indicated he was deceptive on relevant questions relating to the incident.

{¶76} Finally, in his own testimony, Mr. Tenney admitted to drinking several beers on the date in question while responsible for the well-being of two young children.

{¶77} While the record contains conflicting medical expert opinions, the jury was responsible for assigning the appropriate credibility and weight to the medical experts and their testimony.

{¶78} Having reviewed the record, we cannot conclude the jury, in assessing the credibility of the witnesses and resolving any conflicts in the evidence, clearly lost its way and created such a manifest miscarriage of justice warranting reversals of the findings of guilt. Mr. Tenney's third, fourth, and fifth assignments of error are without merit.

{¶79} Based on the foregoing, the judgment of the Trumbull County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J.,

MATT LYNCH, J.,

concur.

15